1   BARBARA JEANNE ALTEMEIER
    13861 YOCKEY STREET
2   GARDEN GROVE, CA 92844-2663
    TELEPHONE: (714) 379-9557
3
    BARBARA JEANNE ALTEMEIER, Pro se
4

5

6

7

8             IN THE UNITED STATES DISTRICT COURT
            FOR THE CENTRAL DISTRICT OF CALIFORNIA
9

10  BARBARA JEANNE ALTEMEIER,        §
                                     §
11        PLAINTIFF,                  §
                                     §
12  v.                               §   Case
                                     §   No. _SACV10-1692 JVS(AGR)
13  DALLAS COUNTY, TEXAS (1);        §
    CITY OF DALLAS, TEXAS (2);       §
14  MUSKEGON COUNTY, MICHIGAN (3);   §   COMPLAINT
    FRUITPORT TOWNSHIP, MICHIGAN     §
15        (4);                       §
    JAMES SCHULTZ (5);               §
16  TONY TAGUE (6);                  §
    DALE J. HILSON (7);              §
17  LOUIS CANALES (8);               §
    RONALD M. HUBNER (9);            §
18  DANIEL DOWNS (10);               §
    RONALD ANDERSON (11);            §
19  LUPE VALDEZ (12);                §
    PARKLAND HEALTH & HOSPITAL       §   Title 42 U.S.C. §§ 1983,
20        SYSTEM AUXILIARY/AKA       §   1985 (3); Tort Action;
          PARKLAND MEMORIAL          §   RICO Violation; Title 28
21        HOSPITAL (13); and         §   U.S.C. §§ 1331, 1332,
    John or Jane Does (14-23),       §   1343, 1367
22  DEFENDANTS.                      §
                                     §
23  _____

24

25

NOW COMES Barbara Jeanne Altemeier, Plaintiff, to file this Complaint and would show the Court the following to wit:

## I.  JURISDICTION

1.)  This action is brought pursuant to Title 42 U.S.C. §§ 1983, 1985 (3), Title 28 U.S.C. §§ 1331 and 1332; Title 28 U.S.C. § 1343, State Law Claims under Title 28 U.S.C. § 1367 and First, Fourth, Fifth, Eighth and Fourteenth Amendments to the U.S. Constitution.

## II.  PARTIES

2.)  The plaintiff in this case is Barbara Jeanne Altemeier, who is a resident of Orange County, Garden Grove, California whose mailing address is 13861 Yockey Street; Garden Grove, California 92844.

3.)  Dallas County, Texas (1) is a Defendant domiciled in Dallas County, Texas, whose agent may be served to Judge James Foster, 411 Elm Street, Suite 210, Dallas, Texas 75202.

4.)  City of Dallas, Texas (2) is a Defendant domiciled in Dallas County, Texas, whose agent, Thomas Perkins, City Attorney, City of Dallas, may be served to at City Hall, 1500 Marilla Street, 7D North, Dallas, Texas 75201-6390.

5.)  Muskegon County, Michigan (3) is a Defendant domiciled in Muskegon County, Michigan, whose agent, Theodore Williams, County Attorney, may be served at 120 West Apple, POB 599, Muskegon, Michigan 49443.

6.)  Fruitport Township, Michigan (4) is a Defendant

2

domiciled in Muskegon County, Michigan whose agent may be served to Ronald Bultje, City Attorney, 101 N. 3rd Street, Grand Haven, Michigan 49417-1209.

7.) Defendant James Schultz (5) is a resident of Muskegon County, whose employment address is 5825 Airline Road, Fruitport, Michigan 49415-9708.

8.) Defendant Tony Tague (6) is a resident of Muskegon County, whose employment address is 990 Terrace Street, 5th Floor, Muskegon, Michigan 49442-3497.

9.) Defendant Dale J. Hilson (7) is a resident of Muskegon County, whose employment address is 990 Terrace Street, 5th Floor, Muskegon, Michigan 49442-3497.

10.) Defendant Louis Canales (8) is a resident of Dallas County, whose employment address is 9915 E. NW Highway, Dallas, Texas 75238.

11.) Defendant Ronald M. Hubner (9) is a resident of Dallas County, whose employment address is 9915 E. NW Highway, Dallas, Texas 75238.

12.) Defendant Daniel Downs (10) is a resident of Dallas County, whose last known employment address is 111 West Commerce Street, Dallas, Texas 75208.

13.) Defendant Ronald Anderson (11) is a resident of Dallas County, whose employment address is 5201 Harry Hines Blvd., Dallas, Texas 75235.

14.) Defendant Lupe Valdez (12) is a resident of Dallas

County, whose employment address is 111 West Commerce Street, Dallas, Texas 75208.

15.) Defendant Parkland Health & Hospital System Auxiliary (13) is a Defendant, whose agent, Michael Silhol c/o Legal Affairs, may be served at 5201 Harry Hines Blvd., Dallas, Texas 75235.

### III. **STATEMENT OF THE CASE**

#### **Preamble**

16.) The purpose of this Statement of the Case is to inform the Court of a number of serious crimes that have been committed against Plaintiff by certain individuals within the following organizational units: the Fruitport Township Police Department, Fruitport, Michigan; Muskegon County Prosecutor's Office, Muskegon, Michigan; the Dallas County Police Department, Dallas, Texas; the staff of the Dallas County Jail, Dallas Texas; Parkland Health & Hospital System Auxiliary, Dallas, Texas; and other named Defendants.

17.) Plaintiff has had medical problems since her birth in 1951. Plaintiff has been diagnosed with an autonomic nervous system dysfunction and sensitivities to various petrochemicals. Plaintiff's doctors orders require her to drink prescription bottled water and eat prescription organic food. Many doctors who specialize in Plaintiff's condition know her case around the world.

18.)  The facts are as follows:

1.  On October 17, 2006, Plaintiff was arrested in Dallas, Texas without a warrant.  The incarceration lasted until January 2, 2007 - a total of 78 days.

2.  Defendant Officer Schultz, is a detective of the Fruitport Township Police Department, Fruitport, Michigan, who falsely made up the felony complaint.

3.  There was no warrant at the time of the arrest.  Only after Plaintiff was arrested in Dallas, Texas, did Officer James Schultz and the Muskegon County Prosecutor request a felony warrant from the 60th District Court, Muskegon, Michigan.  As a result, a felony warrant, count 1: EMBEZZELMENT--FROM A VULNERABLE ADULT--$20,000 OR MORE was issued.

4.  However, there was never any crime of theft committed against the alleged victim by the Plaintiff.

5.  After a two (2) year ordeal that almost cost Plaintiff her life and by which Plaintiff incurred substantial legal expenses, Plaintiff was cleared of all charges with the kind assistance of the alleged victim.  Motion for nolle prosequi was granted, and the case was dismissed without prejudice, on November 10, 2008.

6.  The Defendant arresting officers in the City of Dallas, Texas, Officer Louis Canales and Officer

1    Ronald M. Hubner, arrested Plaintiff on a warrantless
2    arrest.

3  7.  On the day of the arrest, the outside temperature was
4      over 85 degrees Fahrenheit. Without prescription
5      bottled water, the Plaintiff rapidly dehydrated.
6      Subsequently, the arresting officers adamantly
7      refused to allow Plaintiff's prescription organic
8      food or prescription bottled water to accompany her
9      when she was transported to the Dallas County Jail.

10 8.  When Plaintiff first arrived at the jail, a woman of
11     apparent authority was walking around spraying a can
12     containing a noxious substance. While spraying all
13     around the room, the woman sprayed some of the
14     substance directly in Plaintiff's face from a
15     distance of approximately 6 inches. This caused
16     Plaintiff to have an immediate, serious reaction;
17     Plaintiff fell to the floor and never regained the
18     use of her legs for the entire time she was in the
19     jail.

20 9.  Plaintiff was placed in a wheelchair every time she
21     was moved from place to place. Then the wheelchair
22     was removed from the cell each time, leaving the
23     plaintiff immobile. It took weeks of repeatedly
24     requesting the wheelchair be left in the cell to have
25     this request granted.

10. At the beginning of Plaintiff's incarceration, she informed the jail staff of her medical condition/handicapped status. She also informed the jail staff that she required prescription organic food and prescription bottled water. During the booking process, both of these were not noted/written down. When Plaintiff attempted to write on the sheet, the sheet was taken away. Plaintiff was ignored, and some personnel even laughed at Plaintiff's request. Plaintiff had no way of getting the prescription organic food or the prescription bottled water her well established medical needs required.

11. Plaintiff was taken via wheelchair to an area called "the infirmary." On the way to the nurses' station, within the confines of the infirmary, Plaintiff was wheeled past buckets containing chemicals used for cleaning, which resulted in Plaintiff passing out upon arrival at the nurses' station. On October 19th, 2006, Plaintiff regained consciousness while still in the jail and was transported to Parkland Health & Hospital System Auxiliary. Plaintiff informed the doctor that she had not received any prescription organic food or any prescription bottled water, which her medical condition required. The doctor then

allowed Plaintiff's sister, Joan Magnuson, to bring
to the Plaintiff the prescription bottled water.   The
doctor asked Joan Magnuson to also bring in the
prescription food, but Joan Magnuson did not have any
prescription food available at the time, so he told
her to go out and get it and bring it back to the
hospital.    Upon   Joan   Magnuson's   return   to   the
hospital, she discovered there was a shift change and
the doctor who sent her for the prescription organic
food was now gone.   The new doctor, Dr. Charles Todd,
flatly refused to allow Joan Magnuson to give the
Plaintiff   her   prescription   organic   food.    As   a
result, Joan Magnuson showed Dr. Todd a letter from
Dr. Alfred Johnson, who had been Plaintiff's primary
physician for over 15 years, outlining Plaintiff's
medical      requirements,      including      Plaintiff's
prescription   for   organic   food   and   prescription
bottled water.   Dr. Charles Todd chose to ignore Dr.
Alfred Johnson's instructions and even refused to
allow Joan Magnuson to give the food to a third party
that   could   then   in   turn   give   the   Plaintiff   her
prescription organic food.   From that point forward,
all   doctors   involved   with   the   Plaintiff   in   the
emergency room, allowed her to keep the prescription
bottled water, but did not give Plaintiff any food.

1    When Plaintiff returned to the jail, she was wheeled
2    past the same type buckets containing chemicals used
3    for cleaning, causing the Plaintiff to black out
4    again, as she arrived at the same nurses' station.
5    This time, the staff shoved smelling salts into
6    Plaintiff's nose with great force, because
7    Plaintiffs' nostrils were full of blood when
8    Plaintiff regained consciousness.  Then, on October
9    20th, 2006, Plaintiff was transported via ambulance,
10   back to Parkland Health & Hospital System Auxiliary,
11   where Plaintiff was treated against her will and
12   against her doctor's (Dr. Alfred Johnson) written
13   orders, which the emergency room doctors had in their
14   possession.

15   12. Later on October 20th, 2006, Plaintiff was sent back
16   to jail.  This time Plaintiff was placed in solitary
17   confinement on an approximately three (3) foot high
18   concrete slab.  The wheel chair was removed from the
19   room.

20   13. Note:  Jails accommodate other dietary needs, such as
21   diabetic, vegetarian, Muslim, Jewish, etc.  Plaintiff
22   was allowed to have her prescription bottled water
23   after the hospital incident.  The prescription
24   bottled water had to be supplied by the Plaintiff's
25   sister, Joan Magnuson, who flew in from California.

1       However, Plaintiff's prescription dietary needs were

2       not addressed. For more than a week, before the

3       hospital, during the hospital stay, and after

4       returning to jail, Plaintiff was only offered jail

5       food twice in the Dallas County Jail. Other than

6       that, Plaintiff was not offered any food, nor were

7       her dietary needs met. At meal times, a guard

8       pushing the food cart, would park it in front of the

9       door, in plain view of the Plaintiff. Various

10       inmates would place a food tray through each door.

11       Then, an inmate would ask the guard why the opening

12       to the Plaintiff's cell door was closed. A guard

13       would respond, pointing, laughing, and saying

14       something like, "That's Miss Organic. She doesn't

15       eat our food." Then they would finally move the

16       cart. Plaintiff considers this to be physical and

17       psychological abuse, as well as torture.

18   14. A hearing was held on October 25, 2006. The world

19       famous doctor and author Dr. Doris Rapp flew in from

20       Arizona for this hearing. The judge allowed Dr. Rapp

21       to examine Plaintiff. Dr. Rapp confirmed that, in

22       fact, Plaintiff was unable to stand up and walk.

23   15. Plaintiff could still not walk, and without a wheel

24       chair, could not even get to the toilet. Plaintiff

25       did have a throw-up pail from the hospital, so she

succumbed to using it as a toilet. When the pail became full, Plaintiff cried out for help and was ignored. Plaintiff finally had no choice but to toss the contents toward the toilet. Some of the waste reached the toilet; the rest splashed onto the toilet, floor, and walls. Eventually an inmate came to clean the toilet and floors, but the walls were never cleaned, and the stench got so intense that people would hold their noses whenever they came into the cell. For several weeks, Plaintiff had no access to shower facilities. There were never any grab bars for shower or toilet.

16. During the first day in solitary confinement, Plaintiff noticed that she was being ignored.

17. Jail staff did not respond to calls for help, perhaps because they were busy playing card games and slot machines on the jail's computers. When playing the slot machines, a bell would ring and the girl sitting at the computer would say, "I won, I won," or "You won." A guard/staff would play for another guard/staff if that guard was too busy to play for herself. Plaintiff knows this to be true because Plaintiff would witness it during the various times she was wheeled past those computers on the way to the nurses' station. Plaintiff wonders if they were

1       gambling illegally.

2    18. Only after several days following Plaintiff's return

3        to the Dallas County Jail from the second hospital

4        visit was Plaintiff's prescription dietary food

5        eventually allowed into the jail. However, Plaintiff

6        was discriminated against from the first meal because

7        she was only allowed 20 minutes to eat and she was

8        never allowed to take food back to the cell. All

9        Plaintiff's prescription food and prescription

10       bottled water was provided by Plaintiff's sister,

11       like in a third world country. Plaintiff's sister is

12       willing to testify that she and the Plaintiff were

13       verbally abused by the jailers and were treated

14       without dignity or respect. Others who visited the

15       Plaintiff are willing to testify to this abusive

16       treatment.

17    19. Just before Christmas, jail staff told Plaintiff's

18       sister that there was too much of Plaintiff's food in

19       the facility and therefore would not allow a drop-off

20       of food for Plaintiff. On Christmas Day, Plaintiff

21       received only one five (5) ounce box of organic

22       crackers that was to last the entire day. Plaintiff

23       ate a few organic crackers, and then the nurse took

24       away the box. The same box was brought back at the

25       next meal time. No other food was provided to

1    Plaintiff.    Other   inmates   on   Christmas   Day   ate

2    chicken,  cake,  etc.    This   was   cruel   and   unusual

3    punishment.

4  21. On December 20, 2006, Plaintiff was called to court

5    regarding EXTRADITION.    Judge Patterson said,

6        "The TERMS OF THE WAIVER OF EXTRADITON FORM,

7        which  you  execute,  I  will  sign  also,  provide

8        that  the  STATE  OF  MICHIGAN  has  ten  (10)  days

9        from the date of execution of this document to

10       either have extradited you or if they fail to do

11       so,  then  I  will  ORDER  you  released  from

12       custody;…"

13   Judge Patterson continued,

14       "What I'm saying is that ten days from today,

15       you  will  actually  be  in  Michigan  OR  released  –

16       ten days from today – you will be released from

17       the  Dallas  County  Jail,  one  way  or  the  other.

18       Either they pick you up and take you to Michigan

19       or  they  haven't  and  I  ORDER  you  released  from

20       custody; so do you want to sign the waiver?"

21   After  that,  Plaintiff  signed  the  extradition  paper.

22   Instead  of  Plaintiff  being  released  on  December  30,

23   2006,  the  Plaintiff  was  not  released  until  January  2,

24   2007,  in violation of the Judge's verbal order.

25  21. When  Plaintiff  left  the  jail,  Plaintiff  spoke  with

her attorney in Michigan, Christopher Yates (now a judge), who informed Plaintiff that the warrant for her arrest in Muskegon County was still active. He also informed Plaintiff that, according to the Assistant Muskegon County Prosecutor, D.J. Hilson of the Muskegon Prosecutor's Office in Muskegon, Michigan, if Plaintiff turned herself in to the Muskegon, Michigan jail, the jail staff would not allow Plaintiff to have her prescription organic food and prescription bottled water. Assistant Muskegon County Prosecutor Hilson requested Plaintiff's doctors stop sending medical letters regarding her needs and conditions to the Muskegon County Prosecutor's Office, and Assistant Muskegon County Prosecutor Hilson said the jail staff would send Plaintiff to their own doctor. Note: There was not a single, qualified doctor familiar with Plaintiff's type of medical condition in the whole of Muskegon County, Michigan. After the treatment received at the Dallas County Jail, Plaintiff was afraid that she could receive the same or worse treatment. Translation: Plaintiff could die as a result. Note: Within a week or so of Plaintiff's being released from the Dallas County Jail, a television news broadcast reported that a nineteen (19) year old

schizophrenic was placed in solitary confinement at the Detroit, Michigan jail, was not given any food or water, and died on the fourth day. Plaintiff chose not to be murdered in this way and went into hiding for about twenty-three (23) months. Plaintiff could not even prove her innocence if taken to jail because it isn't likely that Plaintiff would live long enough without her prescription organic food and prescription bottled water to make an appearance before a judge. The Assistant Muskegon County Prosecutor, Dale J. Hilson, kept offering Plaintiff plea bargains through her attorney. If Plaintiff accepted some nebulous misdemeanor charge, then Assistant Muskegon County Prosecutor Hilson would accept time served. So, Assistant Muskegon County Prosecutor Hilson kept trying to force Plaintiff to accept a plea bargain through her attorney, which Plaintiff would have no part. There was never a crime in the first place, but Assistant Muskegon Country Prosecutor, Dale J. Hilson, wanted to convict Plaintiff of yet another crime she did not commit.

22. For the next twenty-three (23) months, Plaintiff was forced to be a fugitive because Muskegon County Prosecutor Tony Tague and Assistant Muskegon County Prosecutor Dale J. Hilson were operating under color

of law by maintaining an active arrest warrant for Plaintiff when they had been noticed and knew that no crime had been committed.

23. Around September 2008, Mr. Leland Earnest Davis (the alleged victim) discovered that these false charges had never been dropped. According to documents, Mr. Davis called the Muskegon County Prosecutor's Office and finally talked to the Assistant Muskegon County Prosecutor, Dale J. Hilson. The alleged victim, Mr. Davis, asked Assistant Muskegon County Prosecutor Mr. Hilson to drop the charges, since there was never any crime in the first place. Mr. Davis also sent a follow-up letter. Still nothing happened. So, Mr. Davis wrote another letter to the Muskegon County Prosecutor, Tony Tague. Still nothing happened. Note: The Prosecutor's Office is on the 5th Floor of the Court House Building. As Plaintiff understands it, Muskegon County Prosecutor Tony Tague was up for election and would reach his twenty (20) years to be vested for retirement if he won the election. Instead of dropping the charges on an innocent person, he chose to not drop the charges until after the election was over, perhaps to avoid any negative output on his campaign. Note: In Plaintiff's opinion, her civil rights as a qualified American

voter in the national election were knowingly and willfully taken away by Muskegon County Prosecutor Tony Tague for his own benefit and gain.  Plaintiff was unable to let the public know prior to his election what Muskegon County Prosecutor Tony Tague had done.

19.)  These are only a few of the incidents that happened. There are many, many more instances where the Plaintiff and others were tortured and laws were knowingly broken.  If Plaintiff listed all the instances, she would have to write a book.  The Plaintiff is still traumatized to date because of the acts of the Defendants.

20.)  No human being should be treated like the Plaintiff was treated in this case just because she was different.  Not even in a third-world country, where rights may not even exist, should we ever close even one eye to such atrocities.  Where are the rights of the accused, and especially, where are the rights of the wrongly accused?

21.)  Plaintiff has issued proper paperwork requesting copies of all information pertaining to this case from the jail. What Plaintiff received in return was woefully incomplete. The county said they find no record of Plaintiff being charged or convicted of a felony in Dallas County, Texas since 1973.

22.)  The Defendants in this case deprived the Plaintiff of federal rights and acted under color of state law and federal

law, which are violations of Title 42 U.S.C. §§ 1983 and 1985. The Defendants have acted in bad faith and have employed the means outlined in the Complaint as a means of harassing the Plaintiff. The Defendants who are not state officers used state law, court proceedings and judgments in the overt acts listed in the counts of the Complaint along with assistance from state and local government officials to make their action a joint participation in state action under color of law.

23.) The Defendants conspired for the purpose of impeding, hindering, obstructing or defeating, in any manner, the due course of justice in any state or territory, with intent to deny the Plaintiff the equal protection of the laws, or to injure her for lawfully enforcing or attempting to enforce, the right of the Plaintiff to equal protection of the laws.

24.) The Defendants conspired to go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, the Plaintiff, of the equal protection of the laws, or of equal privileges and immunities under the laws; whereby, the Plaintiff is injured in her person or deprived of having and exercising any right or privilege of a citizen of the United States; the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

25.) Some of the Defendants formed a conspiracy from the

1  beginning, and the other Defendants joined the conspiracy as
2  the events occurred in time.

3  26.)  Plaintiff asks for attorney's fees in accordance with
4  Title 42 U.S.C. § 1988 (b).  Plaintiff seeks compensation for
5  all the expenses incurred and for the indignities, horrendous
6  horrors, terrorism, atrocities and torture she suffered
7  personally and for the nightmare of watching others suffer
8  cruel and inhumane treatment.  Plaintiff continues to suffer
9  post-release, post-traumatic stress syndrome, continues to
10  experience horrible nightmares and severe consequences to this
11  late date.

## IV.  STATEMENT OF THE FACTS

14  27.)  Defendant Dallas County, Texas (1) is the entity that
15  maintains, owns and controls the Dallas County Jail that
16  illegally held the Plaintiff in custody against her will.

17  28.)  Defendant City of Dallas, Texas (2) is the entity that
18  controls and maintains the City of Dallas Police Department
19  which at the time of the arrest illegally arrested and held
20  Plaintiff without a Texas arrest warrant or a Michigan arrest
21  warrant.

22  29.)  Defendant Muskegon County, Michigan (3) is the entity
23  that employs and administers the county prosecutor's office
24  from which a county prosecutor filed a bogus, and improper
25  criminal complaint against Plaintiff.

30.)  Defendant Fruitport Township, Michigan (4) is the entity that controls and maintains the Fruitport Township Police Department which investigated and filed bogus criminal charges against the Plaintiff.

31.)  Defendant James Schultz (5) is a detective and police officer for the Fruitport Township Police Department, in Fruitport Township, Michigan, who investigated and bought bogus charges against Plaintiff without probable cause.

32.)  Defendant Tony Tague (6) is a Muskegon County prosecutor who caused to be issued a bogus Michigan arrest warrant after Plaintiff was arrested in Texas without probable cause and refused to drop the warrant and have the case dismissed in a timely manner..

33.)  Defendant Dale J. Hilson (7) is a Muskegon County prosecutor, who refused to drop warrant and charges after receiving testimony from the alleged victim who stated he was not missing any of his money.  Defendant Hilson also ignored legal notices from Plaintiff's attorney outlining reasons for dismissing warrant and related charges.

34.)  Defendant Louis Canales (8) is a City of Dallas police officer who illegally arrested Plaintiff without a Texas or Michigan arrest warrant and with no explanation of the arrest or statement of the charge.  Also, no Miranda rights were read to the Plaintiff.

35.)  Defendant Ronald M. Hubner (9) is a City of Dallas

police officer who illegally arrested Plaintiff without a Texas or Michigan arrest warrant and with no explanation of the arrest or statement of the charge. Also, no Miranda rights were read to the Plaintiff.

36.) Defendant Daniel Downs (10) is the Chief/Warden of the Dallas County, Texas jail who was aware of the inhumane and bad conditions at the jail; the inhumane and wrongful treatment of the Plaintiff; and inadequate medical care.

37.) Defendant Ronald Anderson (11) is the President/Chief Executive Officer of the Parkland Health & Hospital System Auxiliary and is the person who received the requests for the special needs of medical care, prescription organic food, prescription bottled water, and handicap facilities for the Plaintiff from various sources without adequate response.

38.) Defendant Lupe Valdez (12) is the Dallas County Sheriff who was aware of the inhumane and bad conditions at the jail; and the inhumane and wrongful treatment of the Plaintiff; inadequate medical care; and failed to release Plaintiff from the Dallas County Jail, after expiration of the extradition order, in a timely manner.

39.) Defendant Parkland Health & Hospital System Auxiliary (13) was hired and retained by the Dallas County jail to furnish legal, proper and adequate medical treatment and assistance to Dallas County jail inmates. This was not accomplished for the Plaintiff as outlined in this Complaint.

1
## V.  **COMPLAINT**

2  40.)  The Statement of the Case and Statement of Facts is
3  incorporated in each of the following counts:

4  ### Count I

5  41.)  The Defendants (1), (10), (11), (12) and (13) failed to
6  provide adequate medical care in compliance with
7  Constitutional requirements for the Plaintiff at the Dallas
8  County Jail, Dallas, Texas, hereinafter referred to as DCJ.

9  ### Count II

10  42.)  The Defendants (1), (10), (11), (12), and (13) failed to
11  adequately identify the health needs through appropriate
12  intake screening, thereby preventing Plaintiff from receiving
13  adequate care of medical needs at the DCJ.

14  ### Count III

15  43.)  The Defendants (1), (10), (11), (12) and (13) failed to
16  provide adequate acute and chronic care for the urgent medical
17  needs; thereby, significantly delaying appropriate medical
18  care for the Plaintiff at the DCJ; thereby, creating a life-
19  threatening situation.

20  ### Count IV

21  44.)  The Defendants (1), (10), (11), (12) and (13) failed to
22  provide adequate follow-up treatment for the Plaintiff at the
23  DCJ during incarceration and after discharge.

24  ### Count V

25  45.)  The Defendants (11) and (13) intentionally ignored

medical requests that were generated from Plaintiff resulting in denials of necessary medical care at the DCJ.

Count VI

46.) The Defendants (11) and (13) failed to adequately document and execute relevant medical and discharge orders, records and documents concerning the Plaintiff at the DCJ.

Count VII

47.) The Defendants (11) and (13) failed to provide adequate and minimum food, creating conditions that were extremely inhumane and barbaric in violation of the 8th Amendment of the U.S. Constitution at Parkland Health & Hospital System Auxiliary.

Count VIII

48.) The Defendants (1), (10), (11), (12) and (13) failed to provide adequate medical facilities with reasonable space and sanitation, cleanliness, and supervision concerning the Plaintiff at the DCJ.

Count IX

49.) The Defendants (1), (10), (11), (12) and (13) failed to maintain adequate staffing, training, and supervision of the medical and custody staff concerning the Plaintiff at the DCJ.

Count X

50.) The Defendants (1), (10), (11), (12) and (13) failed to engage effective quality assurance review to track violation

1  incidents concerning the Plaintiff at the DCJ.

2  Count XI

3  51.)  The Defendants (1), (10) and (12) failed to provide

4  adequate and minimum food, clothing and shelter creating

5  conditions that were extremely inhumane and barbaric in

6  violation of the 8th Amendment of the U.S. Constitution at the

7  DCJ.

8  Count XII

9  52.)  The Defendants (1), (10) and (12) did not provide

10  adequate protection from biohazards and openly displayed their

11  lack of environmental control concerning the Plaintiff at the

12  DCJ.

13  Count XIII

14  53.)  The Defendants (1), (2), (3), (4), (5), (6), (7), (8),

15  (9), (10), (11), (12) and (13) have accomplished their actions

16  against Plaintiff by causing Plaintiff to suffer loss of

17  liberty, to endure financial loss and to endure hardships that

18  continue to haunt Plaintiff day and night.

19  Count XIV

20  54.)  The Defendants (1), (2), (3), (4), (5), (6), (7), (8),

21  (9), (10) and (12) conspired amongst themselves and with other

22  persons or entities to willfully, unlawfully and knowingly

23  violate the Plaintiff's liberty, including the other offenses

24  in the remaining Counts by depriving the Plaintiff of her

25  freedom.

## Count XV

55.) All of the Defendants (1), (2), (3), (4), (5), (6), (7), (8), (9), (10) and (12) jointly and severally have conspired to unfairly and in bad faith illegally take and deprive said liberty from Plaintiff in violation of due process of law and equal protection under color of law. The unlawful scheme on the part of the Defendants was to willfully cause the said liberty to be taken without due process of law.

## Count XVI

56.) The Defendants (1), (2), (3), (4), (5), (6), (7), (8), (9) (10), (11), (12) and (13) being two or more persons conspired for the purpose of depriving, directly or indirectly, the Plaintiff of her equal protection of the laws as well as the equal privileges and immunities under the law including the 4th, 5th, 8th and 14th Amendments of the U.S. Constitution of the rights concerning due process of law and equal protection under the law.

## Count XVII

57.) The Defendants (1), (2), (3), (4), (5), (6), (7), (8), (9), (10), (11), (12) and (13) violated Title 42 § 1983 by discriminating against the Plaintiff. The Defendants/conspirators were motivated, did or caused to be accomplished, the acts outlined in this Original Complaint in furtherance of the conspiracy to violate Plaintiff's right to free exercise of rights under the liberty clause of the 5th

1   Amendment, all of which were terminated by and through
2   Defendants' actions, threats and intimidation, creating a
3   chilling effect against the Plaintiff, who is a class of
4   Citizen of the United States of America.

5                         Count XVIII

6   58.) The Defendants (1), (2), (3), (4), (5), (6), (7), (8),
7   (9), (10) and (12) intentionally and illegally committed the
8   overt actions and offenses, outlined in the Statement of the
9   Facts which are incorporated in this Count, by interfering
10  with the free exercise of the Plaintiff's rights involving
11  criminal violations of Title 18 U.S.C. § 241. The Defendants
12  conspired to and did injure, oppress, threaten and intimidate
13  the Plaintiff in the free exercise or enjoyment of the rights
14  and privileges secured to the Plaintiff by the 1st, 5th, 8th and
15  14th Amendments to the U.S. Constitution.

16                         Count XIX

17  59.) The Defendants (1), (2), (3), (4), (5), (6), (7), (8),
18  (9), (10) and (12) intentionally and illegally committed the
19  overt actions and offenses, outlined in the Statement of the
20  Case which is incorporated in this Count, by interfering with
21  the free exercise of the Plaintiff's rights involving the
22  right not to be falsely and illegally libeled and slandered.
23  The Defendants injured the Plaintiff's reputation and exposed
24  the Plaintiff to public hatred, contempt, and ridicule and
25  impeached the Plaintiff's honesty, integrity, virtue, and

reputation and made public the untrue defect of the Plaintiff and thereby exposed the Plaintiff to public hatred, ridicule, and financial injury concerning her good name.

Count XX

60.) The Defendants (1), (2), (3), (4), (5), (6), (7), (8), (9), (10) and (12) with/without others, willfully and knowingly encouraged, inflamed the passions and prejudices, enticed and coerced relatives, etc., former and present associates to testify and make statements against Plaintiff with misrepresentations, false and perjured declarations when, in fact, said associates may have had only grievances and self-interests not related to the jurisdictional criminal investigations against Plaintiff.

Count XXI

61.) The Defendants (1), (2), (3), (4), (5), (6), (7), (8), (9), (10) and (12) caused the Plaintiff to be under an illegal jurisdiction, venue and authority when, in fact, the original alleged violations were fatally defective and did not even exist due to several missing essential legal and factual elements and overcharging in violation of due process and equal protection under the law.

Count XXII

62.) All of the Defendants (1), (2), (3), (4), (5), (6), (7), (8), (9), (10) and (12) discriminated against Plaintiff in violating her due process of law and equal protection under

the law, both individually and in combined conspiracy among themselves. The Defendants had an improper ulterior motive for the discrimination.

## Count XXIII

63.) All of the Defendants (1), (2), (3), (4), (5), (6), (7), (8), (9), (10) and (12) were only concerned with sick injustice, prejudice and unfairness administered to the Plaintiff through their horrific acts, words and deeds, in violation of due process of law and equal protection under the law.

## Count XXIV

64.) All of the Defendants (1), (2), (3), (4), (5), (6), (7), (8), (9), (10) and (12) violated and deprived the Plaintiff of liberty concerning the right to be left alone without interference and harassment under the liberty clause of due process in the Fifth Amendment to the U.S. Constitution, and are continuing to deprive Plaintiff of liberty under the liberty clause of due process in the Fifth Amendment of the U.S. Constitution causing the Plaintiff to experience undue difficulty and expense in protecting her interests.

## Count XXV

65.) The Defendants (1), (2), (3), (4), (5), (6), (7), (8) and (9) have continually exercised bad faith in prosecuting the Plaintiff by refusing to honor or follow established statutes, regulations and legal principles of law, which has

resulted in severe intent to cause harassment.  The Plaintiff
has suffered irreparable damages, as a result that is both
great and immediate.  This characterizes official lawlessness.

Count XXVI

66.)   The Defendants (1), (2), (3), (4), (5), (6), (7), (8)
and (9) interpretational use of the Michigan and Texas
Judicial Procedures constituted a deprivation of
constitutional rights under the color of state law.

Count XXVII

67.)   The Defendants (1), (2), (3), (4), (5), (6), (7), (8),
(9), (10) and (12) have conspired among themselves and with
other persons or entities to willfully, unlawfully and
knowingly violate the liberty and well-being rights of
Plaintiff by depriving the Plaintiff the use and benefit of
her liberty and well-being.  Some of the defendants not
directly involved have participated in the conspiracy by
aiding and abetting the principle conspirators.

Count XXVIII

68.)   The Defendants (1), (2), (3), (4), (5), (6), (7), (8),
(9), (10), (11), (12) and (13) entered into agreements to
carry out the scheme of an enterprise through a pattern of
racketeering activity to deprive and defraud the Plaintiff of
her liberty and well-being as outlined in the Counts by use of
the mails or wires in violation of Title 18 U.S.C. §§ 1341 and

1343.  The Defendants devised or intended to devise a scheme to defraud or obtain criminal charges by means of false or fraudulent pretenses, representations or promises for the purpose of executing the scheme or artifice or attempting to do so by utilizing the U.S. Mail, private or commercial interstate carriers, telephone, fax, email or other methods. The Defendants also criminally violated Title 18 U.S.C. §§ 241 and 242 by willfully, knowingly and unlawfully violating the Plaintiff's civil and constitutional rights.  These acts are all in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) under Title 18 U.S.C. §§ 1961-68 (1994) or more specifically Title 18 U.S.C. § 1962 (c) and (d).  These RICO acts began occurring more than one (1) year in the past.

Count XXIX

69.)  All of the Defendants (1), (2), (3), (4), (5), (6), (7), (8), (9), (10) and (12) jointly and severally have conspired to unfairly and in bad faith illegally take and deprive said liberty and well being from Plaintiff in violation of due process of law and equal protection under color of law.

Count XXX

70.)  The Defendants (1), (2), (3), (4), (5), (6), (7), (8), (9), (10) and (12), being two or more persons, conspired for the purpose of depriving, directly or indirectly, the Plaintiff of her equal protection of the laws, as well as the

30

equal privileges and immunities under the law, including the 4th, 5th and 14th Amendments of the U.S. Constitution of the rights concerning due process of law and equal protection under the law.

### Count XXXI

71.) The Defendants (1), (2), (3), (4), (5), (6), (7), (8), (9), (10) and (12) violated Title 42 § 1985 (3) by discriminating against a class or class of persons, being the Plaintiff. The Defendants/conspirators were motivated, did or caused to be accomplished the acts outlined in the Original Complaint in furtherance of the conspiracy to violate Plaintiff's right to free exercise of rights under the liberty clause of the 5th Amendment, all of which were terminated by and though Defendants' actions, threats and intimidation, creating a chilling effect against the Plaintiff, who is a class of citizen of the Untied States of America.

### Count XXXII

72.) The Defendants (2), (3), (4), (5), (6), (7), (8) and (9) conspired collectively to cause false, erroneous and illegal criminal charges and arrest against the Plaintiff.

### Count XXXIII

73.) The Defendants (2), (3), (4), (5), (6), (7), (8) and (9) conspired collectively to cause false, erroneous and bogus criminal charges and arrest without a supporting affidavit by Defendants.

## Count XXXIV

74.) The Defendants (2), (3), (4), (5), (6), (7), (8) and (9) conspired collectively, in agreement to protect their own interests by perjuring themselves while testifying against Plaintiff.

## Count XXXV

75.) The Defendants (1), (2), (3), (4), (5), (6), (7), (8) and (9) charged the plaintiff with a criminal felony without any credible evidence or probable cause and without an official charging instrument.

## Count XXXVI

76.) The Defendants (1), (2), (3), (4), (5), (6), (7), (8) and (9) arrested and arraigned the plaintiff without a proper arrest warrant and probable cause affidavit.

## Count XXXVII

77.) The Defendants (1), (2), (3), (4), (5), (6), (7), (8), (9), (10) and (12) confined plaintiff to jail without a probable cause charging instrument, arrest warrant and without a probable cause affidavit.

## Count XXXVIII

78.) The Defendants (1), (10) and (12) failed to release the plaintiff from the DCJ, even after a judge's verbal release order that was very specific as to day and time.

### V. **CONCLUSION**

79.) Therefore, due to the severe harassment, intimidation

1   and illegal overt acts against the Plaintiff, Plaintiff has

2   endured and suffered great harm in legal costs, expenditure of

3   vast amounts of her time, loss of reputation, loss of liberty

4   and property, and loss of due process of law and equal

5   protection of the law outside of a legitimate government

6   interest, which was/is totally unwarranted.

7                           **VI.  DAMAGES**

8   80.) The Plaintiff asks this Court for a judgment in her

9   favor with actual damages of one million dollars

10  ($1,000,000.00) from each Defendant per count. The Plaintiff

11  also asks for four million dollars ($4,000,000.00) in punitive

12  damages from each Defendant per count. The Plaintiff does not

13  seek damages from the public (federal or state) treasury, but

14  solely from individual funds of the Defendants, except for

15  Defendants (1), (2), (3), (4) and (13).

16  81.) Due to the fact that the Defendants may be unable or

17  unwilling to pay for said damages in cash, Plaintiff requests

18  that any and all personal and real assets be the subject

19  matter for damages, which would include, but is not limited

20  to, any and all real property, stocks, bonds, vehicles,

21  certificates of deposits, money market accounts, equipment,

22  furniture, jewelry, boats, retirement funds of any type,

23  insurance, sporting equipment, etc. Therefore, the

24  Defendants' real and personal properties be subject to a

25  Notice of Lis Pendens prohibiting the sale or disposition of

1   said property until a final disposition of this cause of

2   action.

4                     Respectively submitted,

7                     Barbara Jeanne Altemeier, Pro Se

8                     13861 Yockey Street
                      Garden Grove, California  92844
                    (714) 379-9557

14                       **VERIFICATION**

16     IT IS HEREBY Verified that under the penalties of perjury

17   that the foregoing Complaint is true and correct to the best

18   of my knowledge and belief.

20     Witness my hand and seal this 3rd day of November, 2010.

23                 Barbara Jeanne Altemeier

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☑)<br>BARBARA JEANNE ALTEMEIER | **DEFENDANTS**<br>DALLAS COUNTY, TEXAS (1), et al. |
| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>BARBARA JEANNE ALTEMEIER, Pro se<br>13861 YOCKEY STREET, GARDEN GROVE, CA 92844-2663<br>PHONE: (714) 379-9557 | Attorneys (If Known)<br>Not Known |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☑ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes   ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No   ☑ **MONEY DEMANDED IN COMPLAINT:** $ Total Actual & Punitive Damages

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Civil Rights Violations: 42 U.S.C. §§ 1983, 1985 (3); Tort Action; RICO Violation; Title 28 U.S.C. §§ 1331, 1332, 1343, 1367

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS | TORTS | PRISONER | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL PROPERTY** | **PETITIONS** | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | **IMMIGRATION** | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 462 Naturalization Application | | ☐ 660 Occupational Safety /Health | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 463 Habeas Corpus- Alien Detainee | ☑ 440 Other Civil Rights | ☐ 690 Other | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 240 Torts to Land | ☐ 465 Other Immigration Actions | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**SACV10-1692 JVS(AGR)**

**FOR OFFICE USE ONLY:**   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | N/A |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☑   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| N/A | Dallas County, Texas or Muskegon County, Michigan |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| N/A | Dallas County, Texas or Muskegon County, Michigan |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _Barbara Jeanne Peltzman_    Date _November 3, 2010_

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | |
|---|---|
| BARBARA JEANNE ALTEMEIER | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. Dallas County, Texas | ) Civil Action No. **SACV10-1692 JVS(AGR)** |
| see attached (1) | ) |
| _____ | ) |
| *Defendant* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

FOR OFFICE USE ONLY

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: BARBARA JEANNE ALTEMEIER
13861 YOCKEY STREET
GARDEN GROVE, CA 92844-2663

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: NOV - 4 2010 FOR OFFICE USE ONLY   *Nancy Castro*

*Signature of Clerk or Deputy Clerk*

SEAL

AO 440 (Rev. 12/09) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00  .

I declare under penalty of perjury that this information is true.


Date: _____         _____
                                                        *Server's signature*

                               _____
                                                        *Printed name and title*

                               _____
                                                        *Server's address*

Additional information regarding attempted service, etc:

1  BARBARA JEANNE ALTEMEIER
   13861 YOCKEY STREET
2  GARDEN GROVE, CA 92844-2663
   TELEPHONE: (714) 379-9557
3
   BARBARA JEANNE ALTEMEIER, Pro se
4

5

6

7

8              **IN THE UNITED STATES DISTRICT COURT**
             **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
9

10  BARBARA JEANNE ALTEMEIER,          §
                                       §
11       PLAINTIFF,                     §
                                       §
12  v.                                  §    Case
                                       §    No._____
13  DALLAS COUNTY, TEXAS (1);           §
    CITY OF DALLAS, TEXAS (2);          §
14  MUSKEGON COUNTY, MICHIGAN (3);      §    COMPLAINT
    FRUITPORT TOWNSHIP, MICHIGAN        §
15       (4);                           §
    JAMES SCHULTZ (5);                  §
16  TONY TAGUE (6);                     §
    DALE J. HILSON (7);                 §
17  LOUIS CANALES (8);                  §
    RONALD M. HUBNER (9);               §
18  DANIEL DOWNS (10);                  §
    RONALD ANDERSON (11);               §
19  LUPE VALDEZ (12);                   §
    PARKLAND HEALTH & HOSPITAL          §    Title 42 U.S.C. §§ 1983,
20       SYSTEM AUXILIARY/AKA           §    1985 (3); Tort Action;
         PARKLAND MEMORIAL              §    RICO Violation; Title 28
21       HOSPITAL (13); and             §    U.S.C. §§ 1331, 1332,
    John or Jane Does (14-23),          §    1343, 1367
22  DEFENDANTS.                         §
                                       §
23  _____

24

25

                        1