ORIGINAL
U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
MAR 1 1 2011
CLERK, U.S. DISTRICT COURT
By ____ Deputy
4:42 pm

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| BARBARA JEANNE ALTEMEIER, | § | No. 3:10-CV-02646-N (BK) |
| | § | |
| PLAINTIFF, | § | HON. DAVID C. GOBEY |
| | § | |
| v. | § | MAG. RENEE HARRIS TOLIVER |
| | § | |
| DALLAS COUNTY, TEXAS (1); | § | |
| CITY OF DALLAS, TEXAS (2); | § | |
| MUSKEGON COUNTY, MICHIGAN (3); | § | |
| FRUITPORT TOWNSHIP, MICHIGAN (4); | § | |
| JAMES SCHULTZ (5); | § | PLAINTIFF'S RESPONSE TO DEFENDANTS, FRUITPORT TOWNSHIP AND JAMES SCHULTZ'S, MOTION TO DISMISS PERSUANT TO FED. R. CIV. P. 12(B)6 AND 12(c) |
| TONY TAGUE (6); | § | |
| DALE J. HILSON (7); | § | |
| LOUIS CANALES (8); | § | |
| RONALD M. HUBNER (9); | § | |
| DANIEL DOWNS (10); | § | |
| RONALD ANDERSON (11); | § | |
| LUPE VALDEZ (12); | § | |
| PARKLAND HEALTH & HOSPITAL SYSTEM AUXILIARY/AKA PARKLAND MEMORIAL HOSPITAL (13); and | § | |
| John or Jane Does (14-23), | § | |
| | § | |
| DEFENDANTS. | § | |

**<u>APPENDIX TO</u>**
**<u>PLAINTIFF'S RESPONSES TO DEFENDANTS MOTIONS TO DISMISS PERSUANT TO F.R.C.P. 12(B)6</u>**

## I. Index to Appendix

A. Evidence that Fruitport Township (4) James Schultz (5) asked City of Dallas (2) Officers Louis Canales (8) and Ronald M. Hubner (9) to perform a "warrantless arrest" of Plaintiff, and they complied: 3.

B. Evidence of the Perjury of Fruitport Township (4) James Schultz (4) and Dale Hilson (7): 7.

Affidavits and reports of Fruitport Township (4) James Schultz (5): 9.

Evidence Relating to Uncompleted Wire Transfer Through Banker's Bank of the West: 14.

Affidavit of Muskegon County (3) Dale Hilson (7): 20.

C. Muskegon Chronicle newspaper article quoting Muskegon County (3) Prosecutor Tony Tague (6) and Fruitport Township (4) James Schultz (5): 22.

D. Letters from Michigan Attorney Chris Yates to Muskegon County Senior Assistant Prosecutor Dale J. Hilson (7): 26.

E. Evidence of Plaintiff's deprivation of food and water in the Dallas County (1) Jail: 31.

F. Evidence related to Plaintiff's incarceration in the Dallas County Jail (1) demonstrating that Plaintiff was held beyond the date Ordered: 36.

Verification 40.

Certificate of Service 40.

## II. Evidence

A. Evidence that Fruitport Township (4) James Schultz (5) asked City of Dallas (2) Officers Louis Canales (8) and Ronald M. Hubner (9) to perform a "warrantless arrest" of Plaintiff, as referred to in the First Amended Complaint (pages 5 lines 3-7, 13-25, page 7 lines 8-10).

1. Fruitport Township (4) James Schultz (5) Police Report dated September 13, 2006 for incident 2006-004326-I page 36, reporting on 10-17-06 in paragraph 4:

> **"I advised Ofc. Canales that I would like them to make a warrantless arrest on Barbara Altemeier for her part in the embezzlements. Ofc Canales then took Barbara into physical custody and I advised them that I would contact the Muskegon Co. Pros. Office and obtain a warrant."**

2. City of Dallas (2) Police Department Arrest Report 06-0058323, printed 03/30/10; warrant number—**no warrant number**.

3. Dallas County (1) Jail Booking Sheet 06085892—**no warrant number**.

| Incident No | Date & Time Rept | Offense: 99003 |
|---|---|---|
| 2006-004326-I | 09/13/2006 20:01 | MISSING PERSONS |

SUPPLEMENT

of the forms and he stated that he would continue to tell Barbara that he was having trouble with his fax machine. Sisson again stated that he thought it was odd that Barbara was calling making the transfer requests on Alan and Leland's Davis's accounts.

ARRESTS BY DALLAS P.D:

On 10-17-06 at 1448hrs, I received a cell phone call from Ofc. Bartek of the Richardson P.D in Texas. I was advised that Dallas Police Department officers had Alan Davis in custody and were detaining Barbara Altemeier at the pharmacy. I was further advised that Barbara and Alan Davis had driven to the pharmacy in a blue Blazer matching the description of Alan Davis's vehicle. I was further advised by Ofc. Bartek that while Alan Davis was in custody, he made the admissions that he and Barbara had "power of attorney" over Leland Davis. Ofc. Bartek advised that she would help investigate the scene and then call me back with more information as there was a lot going on.

CONTACT WITH OFC. LOUIS CANALES-DALLAS P.D.:

On 10-17-06 at 1505hrs, I received a cellular phone call from Dallas P.D. officer Louis Canales. Ofc. Canales confirmed to me that they had Alan Davis is custody and had found Leland Davis in a nearby hotel room. Ofc. Canales advised that Leland Davis was alive in the hotel room, and he had an opportunity to talk to him briefly. Ofc. Canales advised that Leland Davis told him that he felt as thought he had been taken advantage of by Barbara Altemeier. In further observations, Ofc. Canales stated that Leland Davis had bruising around his ankles and legs. I was then advised that Leland Davis seemed "out of it" and spoke very little. Ofc. Canales did state that Leland Davis advised him that he wasn't allowed to contact anyone, but was made to go and see a doctor he didn't want too.

At that point, Ofc. Canales wanted to know about the status of Barbara Altemeier. At 1518hrs, I was advised that she was not arrested and based upon the statements that I had just received from Ofc. Canales and Ofc. Bartek, I advised them that I wanted her arrested. I advised Ofc. Canales that I would like them to make a warrantless arrest on Barbara Altemeier for her part in the embezzlements. Ofc. Canales then took Barbara into physical custody and I advised them that I would contact the Muskegon Co. Pros. Office and obtain a warrant. Ofc. Canales further stated that he would call me back shortly after taking care of the arrest.

FURTHER INVESTIGATION:

On 10-17-06 at approximately 1537hrs, I received another phone call

```
*******************************************************************************
03/30/10   1457          DALLAS POLICE DEPARTMENT                   PAGE    1
*******************************************************************************
                         ARREST REPORT  06-0058323
**************************  ARRESTED PERSON  *********************************
ARRESTED PERSON(L,F,M):ALTEMEIER,BARBRA.J               HOME ZIP CODE: 92844
ADR-HOME:13861   YOCKEY          APT:        CITY:GARDENGR  STATE:CA BT:OV
ADR-ARST:08200 [redacted] ABRAMSRD      A:       CTY:DALLAS   ST:TX BT:253
RACE:W SEX:F [redacted] HT:506 WT:145 HAIR:BLON EYES:BLUE LOC:LS

*****************************   CHARGES   ***********************************
ARST OFCR 1:5409 CANALES        ELEM:      ARREST DATE:101706 TIME:1500
ARST OFCR 2:8737 HUBNER,RONALD M        3:
DISPOSITION:*** ARRESTEE RELEASED  10/17/06   AT 1944  BY 3137 ***
DIV  CHG  TYPE  DESCRIPTION             CLS  UCR    PEN CD   SERVICE # RCDE
01 V HOLD    I  01MICHIGAN 10NO BOND         45                         TRCO

*************************  ARRESTED PERSON INFORMATION  ********************
IDENT #:            PLACE OF BIRTH:                      NICKNAME:
DESCRIBE ARREST PREMISES:                 OFFENSE PREMISES:
SOC SEC#:           FPC HENRY:                      FBI:
ARREST HOW:          SOBER:     DRINKING:      RESIST ARREST:
DRUG USER:     TYPE:               WEAPON TYPE:                       ARMED:
ALIAS NAME 1  (L,F,M):
ALIAS NAME 2  (L,F,M):
EMPLOYER:                     JOB/SCHOOL STAT:    OCCUPATION:
PH-BUS:             HOME:              DL#:                     ST:   TYPE:
*************************  VEHICLE & PROPERTY INFORMATION  *****************
VEHICLE:  LOC:             PROP:  LOC:                  TAG#:
TRANSPORT OFCR:            BKNG OFCR:         SEARCHING OFCR:
CONDITION:                    MED TREATMENT:                 LOCATION:
COMMENTS:                                TRANSFER FROM:            BEAT:
*************************  NOTIFICATION INFORMATION   **********************
DSO#:         FBI#:          DPS#:          RGN#:          NCIC#:
ACCOMPLICE ARST INF:HOLD FOR:         BY:
*********************************************        RIGHT THUMB PRINT
SCARS:                                  MISSING BODY PARTS:
OTHER FEATURES:
MOUSTACHE/TATTOOS:
                              ***  END OF REPORT ***
```

5

06085892
White
Female
Non Hispa
ALTEMEIER, BARBARA

# BOOKING INFORMATION
# DALLAS COUNTY JAIL

| NAME: (LAST, FIRST, MIDDLE) | TRN# |
|---|---|
| ALTEMEIER, BARBARA, JEANNE | |

| *ALIAS NAMES | *RACE | *SEX | *DOB |
|---|---|---|---|
| 92844 | W | F | [redacted] |

| *ADDRESS APT# CITY STATE ZIP | *HT | *WT | *HAIR | *EYES | *SKIN TONE |
|---|---|---|---|---|---|
| 13861 YOCKEY ST. GARDENGROVE CA | 5'6 | 145 | BLND | BLUE | FAIR |

| P.O.B. | CITIZENSHIP | SCARS / MARKS / TATTOOS / AMPUTATIONS |
|---|---|---|
| [redacted] | US | NONE |

| SOCIAL SECURITY # | DRIVER'S LICENSE # | I.D. CARD # | STATE | TYPE |
|---|---|---|---|---|
| [redacted] | [redacted] | | CA | DL |

| SPECIAL EVENT ARREST? YES (NO) TYPE: | *ARRESTING AGENCY | ORI # |
|---|---|---|
| | Dallas Police Dept | TXDPD0000 |

| *ARRESTING/TRANSPORTING OFFICERS | ARREST: DATE / TIME | FIREARM CODE |
|---|---|---|
| Hubner 8731 | 10/17/06 3:00pm | NONE |

| MARITAL STATUS: M (S) W D | IN DALLAS COUNTY JAIL BEFORE? YES (NO) | MEDICAL PROBLEMS: (YES) NO WHAT? AUTONOMIC NERVOUS SYSTEM DYSFUNCTION HEART MURMUR |
|---|---|---|

| MISC. #'S 1: 2: 788838-R | *PLACE OF ARREST 8220 ABRAMS RD |
|---|---|

| VEH. YEAR / MAKE | LIC# | REG. STATE | REG. YEAR |
|---|---|---|---|
| 985 CHEVY BLAZER FORD EXPLORER | [redacted] | TX | 07 |

| VEHICLE STORED AT: | TRANSPORT HAZARD MATERIALS? YES (NO) | OPER. COM. VEHICLE? YES (NO) |
|---|---|---|
| 1955 VILBIG ST. (DALLAS TOWBOYS) | | |

| *OCCUPATION | EMPLOYER | ADDRESS CITY STATE ZIP | *PHONE |
|---|---|---|---|
| UNEMP | | | |

| EMERGENCY CONTACT: | RELATIONSHIP |
|---|---|
| [redacted] Female | SISTER |

| ADDRESS CITY STATE ZIP | *PHONE |
|---|---|
| [redacted] | [redacted] |

*DOES THIS ARREST STEM FROM FAMILY VIOLENCE OR HARASSMENT? YES (NO)
*VICTIM'S NAME: PHONE # OR ADDRESS:

| PRISONER MONEY COUNT: | PRISONER ACKNOWLEDGMENT OF MONEY COUNT: |
|---|---|
| | |

| *SEARCH-IN OFFICER & I.D. # | *DATE | TIME |
|---|---|---|
| | | |

| CHARGE (INCLUDE H/F) | LEVEL AND DEGREE | STATUTE CITATION AND OFFENSE CODE | WARRANT # | DOMESTIC / FAMILY VIOLENCE YES OR NO |
|---|---|---|---|---|
| Hold Fruitport Michigan | | | | |

HANDLED

REV. 8/02



B.  Evidence of the Perjury of Fruitport Township (4) James Schultz (4) and Dale Hilson (7):

**Affidavits and reports of Fruitport Township (4) James Schultz (5):**

1.  Affidavit of Fruitport Township (4) James Schultz (5) dated October 24, 2006 styled "The People of the State of Michigan, Plaintiff, v. Barbara J. Altemeier, Defendant", File No. 06-81844-FY; marked "State's Exhibit #4 10/25/6", showing his perjurous statement:

> **"... in an attempt to transfer money from an account in Leland's name to a separate account setup at a bank not authorized, consented to, ... by Leland."**

2.  Fruitport Township (4) James Schultz (5) Police Report for incident 2006-004326-I of September 13, 2006, printed 10/24/2006, pages 25, 26.

**Evidence Relating to Uncompleted Wire Transfer Through Banker's Bank of the West:**

3.  Form for uncompleted "Wire Transfer Request."

4.  Wire Transfer Instructions into First State Bank, dated March 11, 2010.  Secure email from Michelle Struble, Assistant Vice President, First State Bank-Guernsey, showing proof of the accuracy in B3 of the uncompleted wire transfer request form.

5.  Wikipedia entry for "Bankers' Bank" demonstrating that they "may provide services only to community banks".

6.  Web page for Service 1 Federal Credit Union Neosho, MO branch, www.service1fcu.com/neosho.php .

7.  Web page for First State Bank, Wheatland, WY, www.fsbwy.com/2723/mirror/a_locations.htm.

8.  Fruitport Township (4) James Schultz (5) Police Report for incident 2006-004326-I of September 13, 2006, printed 10/24/2006, page 30.

**Affidavit of Muskegon County (3) Dale Hilson (7):**

9.  Affidavit of Muskegon County (3) Senior Assistant Prosecutor Dale J. Hilson (7) dated October 24, 2006 styled "The People of the State of Michigan, v. Barbara J. Altemeier, Defendant", titled "Request to Maintain Bond at $100,000", File No. 06-81844-FY; marked "State's Exhibit #4 10/25/6".

STATE OF MICHIGAN
IN THE 14TH CIRCUIT COURT OF MUSKEGON COUNTY

THE PEOPLE OF THE STATE OF MICHIGAN,
Plaintiff,

FILE NO. 06-81844-FY

v

BARBARA J. ALTEMEIER,
Defendant.
_____________________________/

**AFFIDAVIT**

NOW COMES DET. JAMES SCHULTZ, being first sworn and deposed, and hereby states as follows:

1. I am a detective for the Fruitport Township Police Department, currently investigating the kidnaping and abuse of Leland Davis.

2. I have spoken with Leland and have been told by him the following: Leland is not related by blood or marriage to Barbara Altemeier; Leland has never accepted Ms. Altemeier as a friend or an acquaintance; On or about 9/12/06 Leland was taken from his home by Barbara Altemeier and driven to Battle Creek, Michigan; on 9/13/06, while in Battle Creek, Leland was forced to sign, by Ms. Altemeier, a new last will and testament regarding his assets, estate, and trust, assigning all his assets to Alan Davis (See Exhibit A); Leland did not wish to have all his assets transferred to Alan, cutting other family and friends from his will; Leland is in the process of having a legitimate will and trust drafted within the next couple of days, voiding the one signed in Battle Creek; Alan Davis is the longtime boyfriend of Ms. Altemeier; on 9/13/06, Leland was than driven by Ms. Altemeier, against his will, from Battle Creek to Neosho, Missouri, where Ms. Altemeier forced Leland into a credit union in an attempt to transfer money from an account in Leland's name to a separate account setup at a bank not authorized, consented to, or recognized by Leland (See Exhibit B); Leland refused to

STATE'S
EXHIBIT
#4
10/25/6

sign the transfer and after the attempt to transfer the money was stopped by Leland's bank in Michigan, Leland was then transported to Texas against his will by Ms. Altemeier, where he remained in her custody; while being held against his will, Leland was never allowed to use the telephone to make calls that Leland wished to make; Leland was only allowed to eat what Ms. Altemeier gave to him and Leland was given unknown medications by Ms. Altemeier in an attempt to control him, as well as being subjected to daily examinations and extraordinary treatments by non-traditional physicians (See Exhibit C); all these things were being funded by the fraudulent use of Leland' funds by Ms. Altemeier; Leland had several credit cards opened with his financial information and in his name by Ms. Altemeier without his consent; Leland was told that he was signing payment for bills when in reality he was signing wire transfer forms, and money withdrawals for Altemeier; Leland went without contact with his friends and family for four weeks. On 9/13/06, Family members contacted the Fruitport Police Department to file a missing person report (See Exhibit D); while in the custody of Ms. Altemeier, she was very controlling, including taking away all of his clothes except for the clothes he wore when he was taken from Michigan; To get Leland to cooperate with Altemeier's wishes and requests, Leland was falsely told by Altemeier, throughout the four weeks of his captivity, that if the police found them, Leland would be put in a home and that all his money would be taken from him.

3. In contact with local authorities, I learned that Altemeier, Alan, and Leland were moving from hotel to hotel checking in under false names, and when authorities finally caught up to Leland he indicated that he was unaware of a lot of the events that had transpired over the last four weeks. (See Exhibit E)

4. From my initial review of the accounting documents of Leland' accounts, Leland had approximately $100,000 taken from his personal assets during the four weeks he was held against his will by Ms. Altemeier. The credit

cards in Leland's name were used without his consent to accrue approximately $7000 in debt for the benefit of Altemeier, such as putting gas in her vehicle, renting hotel rooms, and purchasing food.

5. I have also discovered through a review of the documentation discovered in this case that Ms. Altemeier was in the process of shopping for a RV that was going to be purchased with Leland' funds without his consent.

6. I firmly believe that if Ms. Altemeier is released she will disappear, knowing that she faces serious felony charges in the State of Michigan. I also believe that she is a danger to the public, especially the vulnerable elderly because she is currently unemployed and, based on my conversation with Leland, will use whatever means necessary to obtain money illegally to meet her own needs.

Further Affiant sayeth not.

Detective James Schultz

Subscribed and sworn to before me on October 24th, 2006

Linda S. Schutter, Notary Public
Muskegon County, Michigan
My Commission Expires 04/28/08
Acting in Muskegon County, Michigan



| Incident No | Date & Time Rept | Offense: 99003 |
|---|---|---|
| 2006-004326-I | 09/13/2006 20:01 | MISSING PERSONS |

SUPPLEMENT

TAKEN FROM WORDPERFECT DOCUMENT 2006004326.013
INFORMATION:

On 10-16-06 at approximately 1130hrs, I called the Federal Bureau of Investigation Field Office in Grand Rapids. I called and spoke to Agent William Blynn. I advised Blynn of this case and it's circumstances. Blynn advised that their agency is very interested in this case and he would contact the U.S District Attorney's Office for issuance of a Unlawful Flight to Avoid Prosecution (UFAP) warrant on Alan Davis.

At approximately 1300hrs, I got a call back from Agent Blynn. I was advised that the U.S. Attorney's Office will issue the UFAP warrant on Alan Davis. A meeting was scheduled on 10-17-06 at 1300hrs to meet with Agent Blynn and obtain the warrant, and make notification to the field offices in Houston Texas.

FURTHER FOLLOW UP WITH SERVICE ONE FEDERAL CREDIT UNION:

On 10-16-06 at approximately 1500hrs, I called and spoke to the branch manager, Judy Tibault of the Sherman Blvd. location. I advised Tibault that I was following up on my request of the video from their branch in Neosho Missouri. I further had requested information to be faxed to me regarding the wire transfer. I was advised by Tibault that she had tried several times to obtain the video of Leland Davis and Barbara Altimeier coming into that branch. Tibault stated that she was unable to "unscramble" the video footage as they had gone to an updated surveillance video system in Neosho. Tibault stated that she had checked and there was no way to retrieve this video.

At that point, I did request to have the copies of all paperwork regarding the attempted "wire transfer" of the money. Tibault further stated that she did finally receive this information, but it had been placed in file. I asked her to fax this information to me right away. Tibault stated that she would and advised that it was placed to the side as there had been absolutely no transactions on Leland Davis's account since September 16th 2006. Tibault further advised me that this account has been flagged and nobody is to authorize any account movements with out her authorizations first. Tibault did also state to me that she has the accounts flagged in all of their branches including the other one in Mobile Alabama. This banking affiliate was notified that Altemeier was possibly in route to their location to try the same thing. I was further advised that their branch affiliate in Mobile Alabama had contacted their local Mobile Police Department precinct and filed a report with a Captain in their jurisdiction. No attempts had been made at this, or any other locations by anyone since Altemeier was denied the fund transfer on September 15th 2006.

Tibault stated that she will not release any of the funds at this time. Tibault was very helpful and at 1515hrs, I received a

| Incident No | Date & Time Rept | Offense: 99003 |
|---|---|---|
| 2006-004326-I | 09/13/2006 20:01 | MISSING PERSONS |

SUPPLEMENT

facimilie transaction from Tibault of the original document that Altemeier tried to turn into the branch in Neosho Missouri.

REVIEW OF TRANSFER REQUEST:

On 10-16-06 at 1515hrs, I had an opportunity to review the bank account information listed on the forms that Tibault had submitted. I noted that at the top of the "wire transfer request" there was the Receiving Institutions name. I noted that the form was handwritten and the receiver was a "Bankers Bank of the West." Phone number #307-836-2152. Receiving account number to be 102003743. I noted that the funds were to be received in the name of Leland E. Davis. I did further note that there was no signatures or dollar amounts entered on this form. Since no signatures were present on this form, it is unknown who had filled it out. According to the branch manager in Neosho, this form was completed by Barbara Altemeier. I did note that Altemeier's phone number is listed as contact number and then there is a note next to the number. It states, "Barbara will give to him." I believe this to mean that if the bank was to call this phone number, then she will give the phone to Leland Davis. At this point, there is no further information to add regarding this transaction.

CONTACT WITH BANKERS BANK OF THE WEST/FIRST STATE BANK:

On 10-16-06 at approximately 1530hrs, I called the Bankers Bank of the West. I spoke to a female on the other end and ID myself. I asked this female if I could speak to the branch manager. I was advised that the branch manager, a Derrick Sisson was out of the office. I left my name and phone numbers for Sisson to contact me back about the account information located on the "wire transfer request." I was attempting to get a location of their bank and the owner of the account number 102003743 where the money was supposed to be transferred to from the bank in Neosho Missouri. The female clerk did advise me that this branch is located in the state of Wyoming, but would not advise any further. This female referred me to Sisson. I asked to have Sisson call me back as soon as possible.

DISPOSITION:

Investigation continues:

Det. James Schultz

FROM (MON)OCT 16 2006 14:4? ?1.14:44/No. 6826608209 P 2

09/18/2006 03:37 4174515304 SERVICE 1 PAGE 01

ATTN: Judy For informational Purposes ONLY DO NOT Wire any funds

WIRE TRANSFER REQUEST

Amount of wire: ______

Receiving Financial Institution: Bankers Bank of the West
Phone # (if available): 307-836-2152

Receiving ABA: 102 003743

Beneficiary's Financial Institution (if applicable): First State Bank of Wheatland

Beneficiary's Financial Institution Account # (if applicable): 1000950

Name of person to wire funds to: Leland E. Davis

Account number: 0301280

Per Judy

Special Instructions: ______

You may identify the "wire funds to" or any financial institution by name and by account number (or ABA routing and transit number). The Credit Union (and other institutions) may rely on the account or other identifying number as the proper identification, even if it identifies a different party or institution. If the wire transfer is cleared through the Federal Reserve, the transaction is governed by Regulation J. You authorize the Credit Union to transfer funds as described herein and debit your account in the amount transferred, plus applicable charges.

Account Owner Signature: ______

Account Number: 718641 Date: 9-15-06

Daytime Phone Number: cell 702-241-8617 Barbara will give to him

For Office Use

Received by: me Date/Time: 9-15-06 / 12:25 pm CST

Processed by: ______ Date/Time: ______ Fee Withdrawn ______

231-865-2173

Derrick Sisson [illegible] Wyoming

last [illegible] opened account in [illegible] wired funds [illegible] Then [illegible] checks

(NO IDEA).

Received: Mar 11, 2011 11:33:59 AM
Expires: Mar 25, 2011 12:33:59 PM
From: michelles@fsbwy.com
To: <redacted>
Cc:
Subject: Wire Instructions
Attachments: htmlBody.html

---

WIRE INSTRUCTIONS

INTO FIRST STATE BANK

CORRESPONDENT BANK,

BANKERS BANK OF THE WEST, DENVER

ABA 102003743

CREDIT: FIRST STATE BANK-WHEATLAND

ACCT # 1000950

FINAL CREDIT -CUSTOMER'S NAME AND ACCOUNT

MICHELLE STRUBLE

ASSISTANT VICE PRESIDENT

FIRST STATE BANK-GUERNSEY

PH. 836-2152 FAX 836-2438

----------------------------------------------------------------------

This message was secured by ZixCorp(R).

# Bankers' bank

From Wikipedia, the free encyclopedia

A **bankers' bank** is a financial institution that provides financial services to community banks in the United States of America. Bankers' banks are owned by investor banks and may provide services only to community banks.

By leveraging positive economies of scale, bankers' banks are able to provide many services to community banks that typically would be economically available only to large national or multinational banks. The advantage here is that community banks which use these services can in turn offer them to their customers, allowing these smaller independent banks to effectively compete with larger banks.

The first bankers' bank was formed in Minnesota in 1975. Currently there are 22 bankers' banks across the US serving more than 6,000 banks in 48 states. The largest bankers' bank is at present TIB-The Independent BankersBank, located in Irving, TX, and serving over 1,400 banks across 46 states - plus Guam and Bermuda.

## External links

- Bankers' Bank Council (http://www.bankersbanks.com/)
- Silverton Bank (http://www.silvertonbank.com/)
- PCBB (http://www.pcbb.com/)
- TIB-The Independent BankersBank (http://www.mybankersbank.com/)
- The Bankers' Bank of Kentucky (http://www.bbky.com/)

Retrieved from "http://en.wikipedia.org/wiki/Bankers%27_bank"
Categories: Banks | Bank stubs

- This page was last modified on 24 June 2010 at 20:22.
- Text is available under the Creative Commons Attribution-ShareAlike License; additional terms may apply. See Terms of Use for details.
  Wikipedia® is a registered trademark of the Wikimedia Foundation, Inc., a non-profit organization.



Neosho, MO Branch | Service 1 Federal Credit Union http://www.service1fcu.com/neosho.php

SERVICE
Federal Credit Union

Call Us: 800-879-9697 Online Banking Contact Us What's New
Tip of the Month

# Neosho, MO Branch

About Us
Join Us
24 Hour Access
Loans
Savings
Convenience Services
Financial Education
Home

Please visit us at:

Service 1 Federal Credit Union
P.O. Box 96
816 W. Harmony
Neosho, MO. 64850

Ph: 1-417-451-7588
Fx: 1-417-451-5304
Em: jcullers@service1fcu.com

Click here for branch hours.

YAHOO! Maps View Map

## We NOW Have Discount Movie Tickets!

Tickets are now available to B & B Movie Theater in Neosho!
Purchase tickets for just $6.00 each.

## Welcome to our Membership

Spring Hill Assisted Living is our newest SEG!

## 2010 Member Appreciation Cookout

We had a great time at our Member Appreciation cookout in Neosho on April 23rd. Thank you to everyone who came!

**Security Promise**
Our Credit Union will never ask for any personal credit card or financial information via email. We do not share our internal email lists with anyone, and have security in place to ensure that our internal databases are not being accessed.

**Routing Number**
Service 1 Federal Credit Union's routing number is: 272483264

**Tax Information:**
1099-INT Instructions

17
1 of 2 3/10/2011 4:45 PM



Locations & Hours http://www.fsbwy.com/2723/mirror/a_locations.htm

Home | Contact Us

Online Banking
E-Statements
Banking Products
Loans & Mortgages
IDSafeChoice
Investment Centers
Financial Calculators
About Us
Community Resources
First Kids

First State Bank offers more complete access to your account. Wherever you are, whenever you need it.

Online Banking Login

**Lost or Stolen Debit Card?**

Contact Us or call 1-888-833-3455.

Email us with general questions or comments.

Emailing private information? Use our Secure Email Center.

Announcements

We are updating our bill pay communication. You may have received an email from support@billpayemail.com recently. This is a legitimate email and the address should be added to your safe sender list to continue to receive updates from them.

## Locations & Hours

10

**Wheatland:**
1405 Sixteenth Street
P.O. Box 39
Wheatland, WY 82201
Tel: 307-322-5222
Fax: 307-322-4024

**Banking Hours:**
**Lobby:**
9:00 A.M. - 5:00 P.M.
Monday - Friday

**Drive-Up:**
8:00 A.M. - 5:00 P.M.
Monday - Thursday
8:00 A.M. - 6:00 P.M. Friday

**Torrington:**
1410 E. Valley Hwy 26
P.O. Box 1098
Torrington, WY 82240
Tel: 307-532-5600
Fax: 307-532-5603

**Banking Hours:**
**Lobby:**
9:00 A.M. - 4:30 P.M.
Monday - Friday

**Drive-Up:**
7:30 A.M. - 4:30 P.M.
Monday - Thursday
7:30 A.M. - 6:00 P.M. Friday

**Guernsey**
250 W. Whalen
P.O. Box 879
Guernsey, WY 82214
Tel: 307-836-2152
Fax: 307-836-2438

**Banking Hours:**
**Lobby:**
9:00 A.M. - 5:00 P.M.
Monday - Friday

**Drive-Up:**
8:00 A.M. - 5:00 P.M.
Monday - Thursday
8:00 A.M. - 5:00 P.M. Friday

**The following locations have No Fee ATM Machine for First State Bank customers:**

**I-25 Pit Stop**
1857 W. Mariposa
Wheatland, WY

**First State Bank**
1410 E. Valley Hwy 26
Torrington, WY

**Safeway**
16th & Oak
Wheatland, WY

**First State Bank**
1405 16th Street
Wheatland, WY

**Safeway**
469 Cole Shopping Center
Cheyenne, WY

**Safeway**
554 N. 3rd St
Laramie, WY

18

1 of 1 3/10/2011 4:36 PM

| Incident No | Date & Time Rept | Offense: 99003 |
|---|---|---|
| 2006-004326-I | 09/13/2006 20:01 | MISSING PERSONS |

SUPPLEMENT

TAKEN FROM WORDPERFECT DOCUMENT 2006004326.016
INFORMATION:

On 10-16-06 at approximately 1600hrs, I received a call back from the bank president Derrick Sisson. Sisson stated that he is the branch president of the First State Bank/Bankers Bank of the West. Sisson was advised of the complaint the nature of the missing person, Leland Davis. Sisson further explained to me that he knows Leland Davis and Alan Davis. Sisson advised that he remembers when both Leland and Alan Davis came into their branch and opened the accounts. Sisson did state that there was another woman with them, alledgally Barbara Altemeier. Sisson said that the accounts were opened in Mid-August sometime. Funds were wired to their accounts there from another banks and Sisson stated that Leland advised him that they were moving to the area and needed the money to settle down.

Sisson further advised that during the time that they set up the accounts, Leland and Alan seemed very in "control" and Leland appeared to be of sound mind and body. Sisson advised that he didn't suspect anything out of the ordinary and said that Leland seemed excited about moving the money and moving out to their area. Sisson said that a wire transfer of money was completed later.

I then attempted to verify the account numbers that were on the "wire transfer" request from the credit union affiliate of Service 1 Federal Credit Union in Neosho Missouri. I was advised by Sisson that he didn't recognize any of the these numbers but said that the routing numbers appear to be very close, only off one or two digits. In further talking with Sisson, he stated that this was a very small town and I advised him that I needed them to call their local police departments if Alan, Leland, or Barbara Altemeier come into their branch. Sisson stated that he would. I further advised hi that I have been in contact with their local police department and someone from their area should be contacting them regarding this case.

I then asked Sisson if there was any recent account activity on Leland Davis's account. Sisson said that the accounts were in both Alan and Leland's names and not Barbara Altemeier. I asked Sisson if he could give me some history on the accounts. Sisson was very reluctant to do so but did state that there was only one transaction so far since the account was opened. There was a cancelled check on file. I asked him to tell me where this check was written to or cashed. Sisson would not tell me with out having contact with local police or a federal subpoena, but did state that they had received a cancelled check about a week ago. I advised him that Guernsey Police Department should be in touch with them shortly. As of this time, I have not heard back from Ofc. Orr or Sisson. Follow up to be completed.

Investigation Continues.

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF MUSKEGON

THE PEOPLE OF THE STATE OF MICHIGAN

FILE NO. **06-81844-FY**

v

**BARBARA J. ALTEMEIER**
Defendant.

_______________________/

REQUEST TO MAINTAIN BOND AT $100,000

Now comes The People of the State of Michigan, by and through its attorney, Senior Assistant Prosecuting Attorney Dale J. Hilson and states in its Request as follows:

1. The Defendant kidnaped and held Leland Davis against his will for several weeks.

2. During that time period, Leland was subject to verbal and physical abuse at the hands and direction of Defendant, including being subject to unnecessary medication and medical appointments. (See attached affidavit of Det. James Schultz)

3. Leland also had his financial assets exploited and fraudulently used by Defendant, including having accounts, credit cards, power of attorney documents, and wire transfers set up and used against his will, without his authorization and consent. A majority of the assets used for the benefit of Defendant and not for Leland.

4. The Muskegon County Prosecutors Office has charged one count of felony embezzlement and is exploring charges of kidnaping, elderly abuse, and felony larceny against Defendant. Any combination of these charges will carry a sentence to the Michigan Department of Corrections (prison).

STATE'S EXHIBIT #3 10/25/6

PENGAD-Bayonne, N.J.

5. Given the seriousness of the charges, the high possibility of conviction and the imposition of a prison sentence, the Defendant is a serious flight risk, which would jeopardize the People of the State of Michigan bringing Defendant to justice for Defendant's crimes.

October 24, 2006

Respectfully submitted,

Dale J. Hilson P57726
Senior Assistant Prosecutor
Muskegon County Prosecutor's Office
990 Terrace Street
Muskegon, Michigan 49442
(231) 724-6435

C.  Muskegon Chronicle newspaper article quoting Muskegon County (3) Prosecutor Tony Tague (6) and Fruitport Township (4) James Schultz (5):

    1.  Newspaper article, "Son, 56, faces trial in father's fleecing", by Lisa Medendorp, Muskegon Chronicle, November 6, 2006 Muskegon Chronicle, Page 1A, 4A.

Son, 56, faces trial in father's fleecing
Monday, November 06, 2006
By Lisa Medendorp
Muskegon Chronicle Staff Writer

An alleged plot to deprive an 88-year-old Fruitport Township man of hundreds of thousands of dollars has resulted in criminal charges against his son, a former Muskegon man, and the son's girlfriend.

Alan Kane Davis, 56, of Livingston, Texas, was arraigned last week before 60th District Judge Harold F. Closz III on a charge of embezzlement from a vulnerable adult of $20,000 or more, a 10-year felony.

Bail was set at $150,000 cash or surety.

Davis was extradited from Texas, and his girlfriend, Barbara Altemeier, 55, remains in Texas fighting extradition, authorities said. She is charged on a warrant with the same offense.

The victim was basically taken on a two month "road trip" by his son and Altemeier and ended up Richardson, Texas, prosecutors said. The elderly man is now back in the Muskegon area.

The convoluted scheme involved a new will, a power of attorney and allegedly transferring funds to various accounts across the country -- all with the aim of spending the victim's money.

At one point, Fruitport Township police believed it was possible the elderly man had been murdered. Blood-soaked clothing was found in a utility trailer on property he owned in Sullivan Township.

As it was, the suspects allegedly "controlled everything from what he ate, to what he wore, to what he did," said Fruitport Township Detective James Schultz.

Schultz said he and Norton Shores Detective Elmer Ogg tracked approximately a quarter-million dollars in funds that had been transferred to several different banking locations.

"We've recovered a large majority of this money from banks in the western states," Schultz said, adding that possible additional charges in the case are pending.

Davis listed himself as unemployed on a court document.

Schultz said Davis and his girlfriend moved in with the victim in early April. A trust originally had been set up with the son in control, but some allegedly inappropriate transfers of money, totaling approximately $114,000, were noticed by relatives, Schultz said. Davis' duties with the trust were terminated.

In mid-August, Davis and Altemeier took his father on a trip to North Loop, Neb., where the elderly man grew up. But other family members and neighbors became concerned when the victim did not return and they did not hear anything from him.

On Sept. 13, a report was filed with Fruitport Township police. In the meantime, Davis and Altemeier had taken the victim from Nebraska to Battle Creek, where he had relatives, Muskegon County Prosecutor Tony Tague said.

There, the elderly man allegedly was forced to make a new will naming his son as sole beneficiary and giving power of attorney to Altemeier for medical care, Tague said. Davis was also to oversee his father's finances.

The police investigation un-covered "financial irregularities," Schultz said, and a warrant for Davis was issued.

Altemeier headed for Texas with the victim, and his son returned to Muskegon to appear at an unrelated court hearing. Afterward, he was questioned by police, who found him "very evasive," Schultz said, "and he refused to give the exact location of his father." Davis then apparently left for Texas.

"We had no idea where (the victim) was," Schultz said. Police got search warrants for Altemeier's cellular phone records and determined she was in Richardson, Texas.

Authorities also learned that $90,000 had been transferred from a branch of the victim's bank to a bank in Arizona, Tague said. "The investigation determined they were going to set up accounts across the country so it (the theft) would be more difficult to detect."

The couple intimidated the elderly man, Tague said, and on the way to Texas, Altemeier took him to Neosho, Missouri. He was told the police were after him and if they caught him, he would be put in "an old folks home" and all his money would be taken away, Tague said.

In Texas, Davis and his girlfriend "got credit cards in (the victim's name) and accumulated about $7,000 in credit card debt, much of it for hotels and food," Tague said.

By then, police were getting some indications that the elderly man was alive. "He was allowed some phone calls and was allowed to talk very briefly to family, but the calls were controlled," Schultz said. "It was as if he was told what to say."

Altemeier also called the elderly man's relatives in Muskegon, asking them to take care of certain business involving his rental property, but she was blocking caller ID and refusing to tell people where they were, police said.

On Oct. 17, Schultz got a call from a Wyoming bank official who said Altemeier was then attempting to do a wire transfer to a drugstore in Dallas. Schultz said detectives from Dallas and Richardson responded to the drugstore, where Davis and Altemeier were arrested. A warrant was then issued for Altemeier.

The elderly man was found in a nearby hotel. "He said he did not want to be in Texas and that he was made to sign paperwork and he didn't know what it was," Schultz said. "He said they had been giving him some sort of medications."

Preliminary examination for Davis has been scheduled for Nov. 15.

D.   Letters from Michigan Attorney Chris Yates to Muskegon County Senior Assistant Prosecutor Dale J. Hilson (7):

    1.  Letter of October 4, 2007 from Chris Yates to Dale J. Hilson (7):

    2.  Letter from October 15, 2007 Chris Yates to Dale J. Hilson (7):

October 4, 2007

Dale J. Hilson, Esq.
Muskegon County Prosecutor's Office
990 Terrace Street, Fifth Floor
Muskegon, Michigan 49442

Re: *People v. Barbara Jean Altemeier*, 60th Dist. Ct. No.

Dear D.J.:

Thank you for speaking with me recently about the case against Barbara Jean Altemeier. I appreciate your willingness to try to resolve this matter quickly and on reasonably favorable terms. I have spoken with my client about our discussions, and she has asked me to determine whether you are willing to consider dropping all charges, as opposed to requiring her to plead to some criminal charge. I am writing to explain this request in some detail.

First and foremost, I believe Leland Davis did not lose any money as a result of the actions of Ms. Altemeier and his son, Alan Davis. Thus, the basis for a charge of obtaining money from a vulnerable adult no longer exists, and did not exist in the first place. Second, assuming for the sake of argument that there were improper transfers of money that belonged to Leland Davis, the money was not routed to any account in which Ms. Altemeier had any interest or to which she had access. Alan Davis could have obtained money in the joint accounts to which Leland Davis's money was transferred, but Ms. Altemeier never had any control of, or access to, Leland Davis's money. In sum, Ms. Altemeier was never in actual or constructive possession of any money or property belonging to, or obtained from, Leland Davis.

I appreciate your concern that Leland Davis traveled across the country on several trips with Ms. Altemeier, but there is substantial evidence that Leland Davis did so voluntarily. Of course, I do not know what Leland Davis would say about those trips if he were called to testify, but Leland Davis's blood relatives and lifelong friends, who spoke with Leland Davis during those trips, would testify that Leland Davis was acting voluntarily before and during those trips. In addition, there is substantial evidence that Leland Davis was entirely competent throughout those trips, and therefore of sound mind and capable of making decisions for himself.

I understand that you have misgivings about Ms. Altemeier's motives, but there is evidence that Ms. Altemeier took many actions that benefitted Leland Davis both financially and personally. Ms. Altemeier has no interest in ever having any contact with Leland Davis. As you well know, Ms. Altemeier has already spent more than two months in jail in Texas because of the investigation of her involvement with Leland Davis. The rift within Leland Davis's family has been largely resolved, and Leland Davis is now firmly in control of his assets. Ms. Altemeier wants nothing to do with Leland Davis, so there is no chance that Leland Davis faces any financial peril from Ms. Altemeier.

I know it may seem illogical to walk away from the prosecution of Ms. Altemeier after Alan Davis has already pleaded to a crime, but Ms. Altemeier was never the person with access to Leland Davis's money and she does not constitute a threat to Leland Davis. Therefore, I ask you to end the prosecution of Ms. Altemeier. I encourage you to call me at your convenience to discuss the various reasons that I believe dismissal is appropriate.

Sincerely,

Christopher P. Yates

October 15, 2007

Dale J. Hilson, Esq.
Muskegon County Prosecutor's Office
990 Terrace Street, Fifth Floor
Muskegon, Michigan 49442

Re: *People v. Barbara Jeanne Altemeier*, 60th Dist. Ct. No. 06-081844-FY

Dear D.J.:

Thank you for speaking with me recently about the case against Barbara Jeanne Altemeier. I appreciate your willingness to try to resolve this matter quickly and on reasonably favorable terms. I have spoken with my client about our discussions, and she has asked me to determine whether you are willing to consider dropping all charges, as opposed to requiring her to plead to some criminal charge. I am writing to explain this request in some detail.

Ms. Altemeier is charged with embezzlement from a vulnerable adult, MCL 750.174a(5)(a). First and foremost, I believe Leland Davis did not lose any money as a result of the actions of Ms. Altemeier. Indeed, Leland Davis confirmed under oath at Alan Davis's plea hearing that he has not lost any money. Thus, there is no basis for a charge of obtaining money from a vulnerable adult by embezzlement. Second, assuming for the sake of argument that there were improper transfers of money that belonged to Leland Davis, the money was never routed to any account in which Ms. Altemeier had any interest or control or to which she had access. In sum, Ms. Altemeier was never in actual or constructive possession of any money or property belonging to, or obtained from, Leland Davis.

I appreciate your concern that Leland Davis traveled across the country on several trips with Ms. Altemeier, but there is substantial evidence that Leland Davis did so voluntarily. Of course, I do not know what Leland Davis would say about those trips if he were called to testify, but Leland Davis's blood relatives and lifelong friends, who spoke with Leland Davis during the trips and some with whom he stayed during the trips, would testify that Leland Davis was acting voluntarily before and on the trips. In addition, there is substantial evidence that Leland Davis was entirely competent throughout those trips, and therefore of sound mind and capable of making decisions for himself.

I understand that you have misgivings about Ms. Altemeier's motives, but there is evidence that Ms. Altemeier took many actions that benefitted Leland Davis. The rift within Leland Davis's family has been largely resolved. As you well know, Ms. Altemeier has already spent more than two months in jail in Texas because of the investigation of her involvement with Leland Davis. Ms. Altemeier has no interest in having any further contact with Leland Davis, so there is no chance that Leland Davis faces any financial peril from Ms. Altemeier.

I know it may seem illogical to walk away from the prosecution of Ms. Altemeier after Alan Davis has already pleaded to a crime, but Ms. Altemeier was never the person with access to Leland Davis's money and she does not constitute a threat to Leland Davis. Therefore, I ask you to end the prosecution of Ms. Altemeier. I encourage you to call me at your convenience to discuss the various reasons that I believe dismissal is appropriate.

Sincerely,

Christopher P. Yates

E.  Evidence of Plaintiff's deprivation of food and water in the Dallas County (1) Jail:

    1.  Letter from Johnson Medical Associates dated October 19, 2006 prescribing bottled water and organic food for Plaintiff.

    2.  Parkland Health & Hospital System (13) patient EmSTAT EDIS assessment sheet for Barbara J. Altemeier for Thursday, October 19, 2006, pages 2 and 3, showing no food and water for 36 hours

    3.  Parkland Health & Hospital System(13) / Dallas County (1) Jail Memo from Coleen Eickmeier, Jail Health Director of Nursing dated 10/24/06 Re: SPECIAL Food Arrangements for Barbara Jeanne Altemeier – allowing her family to bring her food.



JOHNSON
MEDICAL
ASSOCIATES

October 19, 2006

**RE: Barbara Altemeier**

To Whom It May Concern:

Ms. Altemeier has been a patient of mine for over 15 years. She is chemically sensitive which includes, adverse reactions to preservatives and additives in food and chlorine/VOC's in water. Due to this medical condition she has been eating organic food and drinking bottled purified water over these last 15 years.

IT IS MEDICALLY NECESSARY THAT SHE RECEIVE

- SPARKLETS BOTTLED PURIFIED WATER IN LARGE HARD PLASTIC CONTAINERS ONLY
- ORGANIC FOOD ONLY
- CONTINUOUS OXYGEN DURING TRANSPORTATION IF EXRADITED TO AVOID CHEMCIAL ODORS - 4l/min O2

If you have any questions regarding this please contact me.

Sincerely Yours,

Alfred R. Johnson, D.O.
ARJ/smm

101 South Coit, Suite 317 • Richardson, Texas 75080 • (972) 479-0400
Fax (972) 479-9435 • (800) 807-7555

**Parkland Health & Hospital System**

5201 Harry Hines Blvd.
Dallas, Tx 75235

**Emergency Services Dept.**
214-590-8000
Assessment Sheet

MR # 000004101342 Sex: Female DOB: 02/01/1951
Name: Altemeir, Barbara
Phone: (214)000-0000
Address: 500 COMMERCE, DALLAS, TX 75208
Room #: Red 15 Account # 000309211011 Age: 55

**ER Visit**

**02:36 10/19/2006 - Change Room -- Mary Jackson, RN 21429**
Change Room: Triage
**02:44 10/19/2006 - Initial Triage Info -- Mary Jackson, RN 21429**
Treatments PTA: * None
Chief Complaint: Dehydration
Advanced Directives: None
Initial Triage Acuity: 4 - Semi-Urgent
Note: Pt brought to esd via county police for dehydration..per note pt has not had food or fluids for 36 hrs...pt states is allergic to all foods except organic and is allergic to chemical and compounds in water..states can only drink the brand name water of Sparklett...pt denies psych hx..does state has an autonomic nervous system disorder..reason for not being able to walk at this time..but was able to walk when she was at the pharmacy when they arrested her "pt states has abnormally high toxic chemicals in body" can't break them down..pt is tachycardic at triage 128-130 and is hypertensive walked back to west er...
**02:47 10/19/2006 - Past Medical History -- Mary Jackson, RN 21429**
Medical history: Hyperthyroidism, Heart murmur, Asthma
Surgical history: Tonsillectomy
Note: Pt states has thryroid goiter and chemical sensitivity. Pt states menstrual cycle was a couple of months ago and is not able to remember exact date..
**02:48 10/19/2006 - Allergy Information -- Mary Jackson, RN 21429**
Note: Pt voices multiple med allergies..also allergic to plastics...
**02:49 10/19/2006 - Vital Signs -- Mary Jackson, RN 21429**
Temp: 37.2
BP: 185/83, Automatic, Regular cuff
HR: 128
Resp: 16
**02:49 10/19/2006 - Change Room -- Mary Jackson, RN 21429**
Change Room: Red Walkback
**02:49 10/19/2006 - Pain -- Mary Jackson, RN 21429**
Pain Severity: 3/10
**02:49 10/19/2006 - Oximetry -- Mary Jackson, RN 21429**
Pulse Oximetry %: 97
Oxygen Therapy: Room Air
**02:52 10/19/2006 - Change Room -- Russell Genzel, RN CCRN 25005**
Change Room: Red 15
**02:56 10/19/2006 - Reg Documentation -- Estherlene Leonard 7211**
Reasons unable to register: Provider with patient
**04:21 10/19/2006 - Reg Documentation -- Paulita Gallegos 15397**
Consent Forms Signed: Yes
Clinic Affiliation: No
**04:43 10/19/2006 - Change Physician -- Garry Gagnon, MD 52323, 2007**
ER Physician: Gagnon, MD 52323, Garry
Resident: Unassigned
Prim. Care Provider: Unassigned
Responsible Physician: Gagnon, MD 52323, Garry
**06:31 10/19/2006 - Reassessment -- Barbie Lane, RN 24072**
Note: Labs drawn and sent. Family members to bedside from out of town brought in "Sparkletts bottled water", the only water that pt can drink. Pt refused IV. Pt now has large water bottle at bedside for hydration. Awaiting lab results.
**06:51 10/19/2006 - Reassessment -- Minerva Alvarez, 20537**
Note: pt. refused ekg. she stated she is allergic to many things and she wanted to know what chemicals are used on the adhesive of the ekg tab.
**07:19 10/19/2006 - Change Physician -- Ava *Pierce, MD, 41039**
ER Physician: Gagnon, MD 52323, Garry
Resident: Unassigned
Prim. Care Provider: *Pierce, MD, 41039, Ava
Responsible Physician: Gagnon, MD 52323, Garry
**08:06 10/19/2006 - Reassessment -- Sara Castillo, RN 25011**
Note: pt. seen purposefully and forcefully dry heaving into a emesis basin. pt. states she is nauseus after drinking her water.
**08:11 10/19/2006 - Vital Signs -- Ashley Farnsworth, RN 25006**
Temp: 37.3
BP: 146/61, Automatic, Lying, Regular cuff
HR: 137
Resp: 18
**08:11 10/19/2006 - Pain -- Ashley Farnsworth, RN 25006**
Pain Severity: 5/10
**08:11 10/19/2006 - Oximetry -- Ashley Farnsworth, RN 25006**
Pulse Oximetry %: 95
Oxygen Therapy: Room Air
**08:14 10/19/2006 - Reassessment -- Ashley Farnsworth, RN 25006**
Note: pt lying flat in bed awake and verbal. oriented x 3 approrpriately. pt appears in nad. pt noted to be tachycardic at this time. pt has refused iv fluids previously. pt with 2 gallon jug of water at bedside. encouraged to drink fluids for rehydration. remaining vss. pt remains in police custody. awaits lab results.
**08:40 10/19/2006 - Change Physician -- Charles Todd, MD 52334, 2007**
ER Physician: Todd, MD 52334, Charles
Resident: Unassigned
Prim. Care Provider: *Pierce, MD, 41039, Ava
Responsible Physician: Todd, MD 52334, Charles
**12:03 10/19/2006 - Vital Signs -- Shannon Murphy, RN 26607**
Temp: 36.6
BP: 145/67, Automatic, Regular cuff
HR: 127
Resp: 20
**12:03 10/19/2006 - Pain -- Shannon Murphy, RN 26607**
Pain Severity: 0/10 - none
**12:03 10/19/2006 - Oximetry -- Shannon Murphy, RN 26607**
Pulse Oximetry %: 99
Oxygen Therapy: Room Air
**12:06 10/19/2006 - Reassessment -- Shannon Murphy, RN 26607**
Note: pt found to be sitting up in bed, coughing up copious amounts of green mucous into a plastic container. when asked if she would drink more water pt stated "i can't do it by myself, i'm allergic to plastic". when asked if the pt would drink out of small stirafoam cups pt stated "hell no, i am allergic, really allergic to stirafoam, when they did that scan they found so much strira in my blood that i cannot have any more!" pt vss, still noted to be tachycardic, encouraged to drink more fluids. pt voiced understanding of medical condition and the need to drink more water. still refusing IV treatment.
**15:34 10/19/2006 - EKG Complete -- Cissy Kuruvilla, 16676**
EKG Given To: Todd, MD 52334, Charles
**15:52 10/19/2006 - Medication Administered -- Andrea Smith, RN, 9267**
Medication: Propranolol
Dose: 20
Units: mg
Route: PO
**15:56 10/19/2006 - Vital Signs -- Ashley Farnsworth, RN 25006**
Temp: 36.8
BP: 166/57, Automatic, Regular cuff
HR: 128
Resp: 19
**15:56 10/19/2006 - Oximetry -- Ashley Farnsworth, RN 25006**
Pulse Oximetry %: 99
Oxygen Therapy: Room Air
**15:56 10/19/2006 - Pain -- Ashley Farnsworth, RN 25006**
Pain Severity: 0/10 - none
**17:34 10/19/2006 - Medication Administered -- Shannon Murphy, RN 26607**
Dose: 100
Units: mg
Route: PO
Note: PTU- for hyperthyroid, ordered 600 mg, given 100mg, see nurse notes
**17:35 10/19/2006 - Vital Signs -- Shannon Murphy, RN 26607**
BP: , Automatic, Regular cuff
HR: 132
**17:35 10/19/2006 - Pain -- Shannon Murphy, RN 26607**
Pain Severity: 0/10 - none
**17:40 10/19/2006 - Reassessment -- Shannon Murphy, RN 26607**
Note: pt laying in bed with basin containing 8oz vomit. pt claims "i had a reaction to that medicine my doctor gave me, i am very sensitive to medications, so i don't think i can take anymore" pt needed to be medicated per dr order for hyperthyroid, was explained this. pt took 100mg then stated "i am haveing a reaciton, see i am having a reaction, i cannot open my eyes, I cannot open my eyes, see my eyes are closing, and now i cannot open them." pt is in no distress, vss, abc intact. dr todd notified. pt was able to drink out of a "sterile"

**Parkland Health & Hospital System**

5201 Harry Hines Blvd.
Dallas, Tx 75235

**Emergency Services Dept.**
214-590-8000
Assessment Sheet

MR # 000004101342 Sex: Female DOB: 02/01/1951
Name: Altemeir, Barbara
Phone: (214)000-0000
Address: 500 COMMERCE, DALLAS, TX 75208
Room #: Red 15 Account # 000309211011 Age: 55

plastic cup.

**20:25 10/19/2006 - Change Nurse -- Thomas Tierney, RN 25728**
Primary Nurse: Tierney, RN 25728, Thomas
Secondary Nurse: Unassigned
Responsible Nurse: Tierney, RN 25728, Thomas

**20:25 10/19/2006 - Vital Signs -- Thomas Tierney, RN 25728**
BP: 150/54, Automatic, Regular cuff
HR: 116
Resp: 16

**20:25 10/19/2006 - Pain -- Thomas Tierney, RN 25728**
Pain Severity: 5/10

**20:25 10/19/2006 - Oximetry -- Thomas Tierney, RN 25728**
Pulse Oximetry %: 98
Oxygen Therapy: Room Air

**20:27 10/19/2006 - Reassessment -- Thomas Tierney, RN 25728**
Note: Pt lying in bed, AOx3, NAD, tachycardic. Reports no PO intake since Sun. until some water today. Psych MD with patient for assessment.

**20:29 10/19/2006 - Change Physician -- Andy Kahn, MD 52333, 2007**
ER Physician: Kahn, MD 52333, Andy
Resident: Unassigned
Prim. Care Provider: *Pierce, MD, 41039, Ava
Responsible Physician: Kahn, MD 52333, Andy

**21:15 10/19/2006 - Attending Note -- Charles Todd, MD 52334, 2007**
Note: This is not an attending note. THis is a resident note. After thorough discussion with pt, patients sister and psychiatry, the pt has decided that she does not want treatment for hyperthyroidism even though the risk of no treatment can be cardiovascular collapse. She states that the only water she can have is Sparklettes but not sterile water nor is she willing to take an iv. Endocrine was called as indicated in the chart and the pt was to be put on propranolol until the heart rate and symptoms are under control. The pt refused the iv and oral medicines knowing the consequences.

**21:30 10/19/2006 - Discharge Diagnosis -- Charles Todd, MD 52334, 2007**
Primary: Hyperthyroidism
Secondary: Tachycardia

**21:41 10/19/2006 - Discharge Note -- Charles Todd, MD 52334, 2007**
Note: You have tachycardia and fluid depletion from your hyperthyroidism. This is incredibly dangerous and we attempted to treat this in the ER and admit you but you have refused our treatment on account of your "chemical sensitivity". You have refused all intake other than Sparklettes water. You have denied any intravenous treatment also. At some point in the near future you will have cardiovascular collapse and die if immediate treatment isn't given. We have attempted full treatment here. Please follow up with endocrinology if you desire here in 6 weeks.

**21:44 10/19/2006 - Ref/App -- Charles Todd, MD 52334, 2007**
Appointment with: Endocrine Clinic
Phone: 214-590-5603
Schedule: Next Available Appt
Consult Resident: Todd, MD 52334, Charles
Rationale for Visit: hyperthyroidism refused medical care

**21:47 10/19/2006 - Discharge Note -- Charles Todd, MD 52334, 2007**
Note: You have tachycardia and fluid depletion from your hyperthyroidism. This is incredibly dangerous and we attempted to treat this in the ER and admit you but you have refused our treatment on account of your "chemical sensitivity". You have refused all intake other than Sparklettes water. You have denied any intravenous treatment also. At some point in the near future you will have cardiovascular collapse and die if immediate treatment isn't given. We have attempted full treatment here. Please follow up with endocrinology if you desire here in 6 weeks.

**22:20 10/19/2006 - Discharge Condition -- Thomas Tierney, RN 25728**
**Originally entered 22:21 10/19/2006**
Acuity: 4 - Semi-Urgent
Condition: Unchanged
Mobility at Discharge: Ambulatory
Patient Teaching: Written dx instructions reviewed w/ pt, Educated patient on pain management, Follow-up plan of care reviewed w/ pt
Mode of Discharge: Police

**22:21 10/19/2006 - Stand Alone Charges -- Thomas Tierney, RN 25728**
Treatment Area: West
Non-Trauma: Charge Level V

**22:21 10/19/2006 - Medicine -- Thomas Tierney, RN 25728**
**Originally entered 22:21 10/19/2006**
Medication: **See MD documentation

Please post!

**Parkland Health & Hospital System / Dallas county Jail Health**

# Memo

**From:** Colleen Eickmeier (CME)
Jail Health Director Of Nursing

**Date:** 10/24/06

**Re:** SPECIAL Food Arrangements

---

Arrangements have been made to allow the family member for Barbara Altemeier #06085892, located in NT, to bring in food that has been commercially SEALED. This has been cleared through the Chain of Command for DSO.

Here is the process:

- Family member to bring food to NT and present to NT Building Control Center
- NT Building Control will forward the food to the Nurses station on 5th floor NT
- Nursing staff are to label with Ms. Altemeier's name, and date the food
- Food is to be stored in appropriate fridge in the Nurses station
- Ms. Altemeier is to be brought to the Nurses station to eat
- Food will be prepared in the Nurses station
- Because Ms. Altemeier will require an Officer escort, please inform Inmate and Officer that you can allow 20 minutes (apart from food prep) for meal consumption
- Ms. Altemeier will be observed/monitored while eating
- Nurse shall document in EMR what was eaten, and quantity
- Food is not to be released to Ms. Altemeier to take back to her cell
- Nursing shall ensure that Ms. Altemeier eats this evening (if food delivered), then after midnight tonight, begin serving breakfast and lunch as close to the schedule for Jail feeding as possible.

Thank you for your co-operation in this combined effort with DSO, to promote quality care in a challenging environment.

10/24/06

Colleen Eickmeier RN, Director of Nursing
Dallas County Jail Health Services
Parkland Health & Hospital System
Phone: (214) 653 – 2621
Pager: (214) 786- 3646
Fax: (972) 739 – 3924
ceickm@parknet.pmh.org

STATE'S EXHIBIT #6 10/25/6
PENGAD-Bayonne, N.J.

F. Evidence related to Plaintiff's incarceration in the Dallas County (1) Jail demonstrating that Plaintiff was held beyond the date Ordered:

1. Waiver of Extradition form for Altemeier, Barbara from Texas to Michigan, signed by Dallas County Judge on December 20, 2006.

2. Transcript of Hearing of December 20, 2006 on the extradition of Barbara Altemeier, page 5.

3. Dallas County Sheriff's Office memorandum stating to Altemeier, Barbara "the time you spent in the Dallas County (1) Jail", signed by K. Glaze, Record/ID Clerk, Dallas County (1) Sheriff's Department.



# WAIVER OF EXTRADITION

STATE OF TEXAS §
COUNTY OF DALLAS §

I, ALTEMEIER, BARBARA, AFTER BEING FULLY INFORMED BY J. BOYD PATTERSON, JUDGE OF THE 282nd CRIMINAL DIST COURT OF DALLAS COUNTY, TEXAS, OF THE DEMAND FOR MY SURRENDER TO ANSWER TO A CRIME WITH WHICH I AM CHARGED IN THE STATE OF MICHIGAN, HEREBY IN THE PRESENCE OF SAID JUDGE, WAIVE THE ISSUANCE AND SERVICE OF A GOVERNOR'S WARRANT OF ARREST AND ANY OTHER PROCEDURE INCIDENTAL TO EXTRADITION PROCEEDINGS, AND CONSENT TO RETURN VOLUNTARILY AND WITHOUT FORMALITY WITH ANY OFFICER FROM THE STATE OF MICHIGAN.

WITNESS MY HAND, THIS THE 20th DAY OF DECEMBER, 2006.

Barbara Altemeier
BARBARA ALTEMEIER

ORDER

STATE OF TEXAS §
COUNTY OF DALLAS §

I CERTIFY THAT I HAVE EXAMINED THE FOREGOING WAIVER EXECUTED BY LUPE VALDEZ S?SGT REED, WHO APPEARED BEFORE ME, AND DIRECT ~~JIM BOWLES~~, SHERIFF OF DALLAS COUNTY, TEXAS TO DELIVER THE SAID ALTEMEIER, BARBARA, WITHIN TEN (10) DAYS FROM THIS DAY, TO ANY OFFICER FROM THE STATE OF MICHIGAN.

WITNESS MY HAND, THIS THE 20th DAY OF DECEMBER, 2006.

JUDGE

DALLAS COUNTY, DALLAS, TEXAS

New Years with all the travelling because it's just a commuter jet that comes -- flies into Muskegon --

THE COURT: -- The TERMS OF THE WAIVER OF EXTRADITION FORM, which you execute, I will sign also, provide that the STATE OF MICHIGAN has ten (10) days from the date of execution of this document to either have extradited you or if they fail to do so, then I will ORDER you released from custody; so do you wish to execute the document under those circumstances?

Ten days from today being the 30th of December (2006).

THE APPLICANT ALTEMEIER: Today's the 30th?

THE COURT: No.

Ten -- ten days from today will BE the 30th of December.

THE DEFENDANT ALTEMEIER: Oh!

THE COURT: What I'm saying is that ten days from today, you will actually be in Michigan OR released -- ten days from today -- you will be released from the Dallas County Jail, one way or the other.

Either they pick you up and take you to Michigan or they haven't and I ORDER you released from custody; so do you want to sign the waiver?

THE APPLICANT ALTEMEIER: I guess so.

THE COURT: Very well!

Then, Mr. Blocker, do you have anything for the record?

MR. BLOCKER: No, Your Honor.



Lupe Valdez, Sheriff
FRANK CROWLEY COURTS BUILDING
133 NORTH INDUSTRIAL BOULEVARD
DALLAS, TEXAS 75207-4313

June 10, 2009

Dear Mr./ Mrs. ALTEMEIER,BARBARA
You have requested that this department provide you with documentation concerning the time you spent in the Dallas County Jail.

The records of the Dallas County Sheriffs Department reflect that ALTEMEIER,BARBARA

with the date of birth of 2/1/1951 a white / female was in the Dallas County Jail on the following dates:

Booked into jail on 10/17/2006 and released from jail on 1/2/2007

Booked into jail on and released from jail on

Booked into jail on and released from jail on

Booked into jail on and released from jail on

Booked into jail on and released from jail on

Booked into jail on and released from jail on

Booked into jail on and released from jail on

Booked into jail on and released from jail on

Should you need to have this information verified, please call the Sheriff's Department Identification Section at 214-653-2678.

Sincerely,
Lupe Valdez
Sheriff

K.GLAZE
RECORD / ID CLERK
Dallas County Sheriff's Department

Respectively submitted,

Barbara Jeanne Altemeier, Pro Se
13861 Yockey Street
Garden Grove, California 92844
(714) 379-9557

## VERIFICATION

IT IS HEREBY Verified that under the penalties of perjury that the foregoing Appendix to Plaintiff's Responses to Defendants Motions to Dismiss Persuant to F.R.C.P. 12(b)6 is true and correct to the best of my knowledge and belief.

Witness my hand and seal this 11 day of March, 2011.

Barbara Jeanne Altemeier

## CERTIFICATE OF SERVICE

IT IS HEREBY Certified that a copy of the aforementioned Appendix to Plaintiff's Responses to Defendants Motions to Dismiss Persuant to F.R.C.P. 12(b)6 was sent by First Class Mail on the 11 day of March, 2011 to the Defendants below.

Barbara Jeanne Altemeier

G. Gus Morris
McGraw Morris P.C.
2075 W. Big Beaver Road
Troy, Michigan 48084

Ronald G Acho
Cummings McClorey Davis & Acho PLC
33900 Schoolcraft
Livonia, MI 48150

Winston L Borum
Borum & Hancock
2485 Burnett Plaza
801 Cherry St Unit 14
Fort Worth, TX 76102

J G Schuette
James Carroll Butt
Dallas City Attorney's Office
1500 Marilla Street
7th Floor
Dallas, TX 75201

Tammy Jean Ardolf
Dallas County Criminal District Attorney's Office - Fed
133 N Industrial Blvd
LB 19
Dallas, TX 75207